8. Fla. R. App. P. 9.410 permits this Court to impose sanctions for, inter alia, any proceeding that is frivolous or in bad faith.

9. In this case, both the Appellant and the Appellant's counsel know or should know that they have no legal or factual basis for maintaining this appeal, and that it is, therefore, frivolous at best.

10. Thus, the Appellee seeks recovery of its fees and cost pursuant Fla. R. App. P. 9.410 and in accordance with this Court's inherent authority.

Wherefore, the Appellee respectfully requests that this Court enter and order, granting the Appellee's Motion for Sanctions Pursuant to Fla. R. App. P. 9.410, awarding the Appellee all fees and costs associated with defending this appeal against the Appellant, to be paid by the Appellant, the Appellant's counsel, and Barnard Law Offices, L.P., joint and severally, and for any other relief this Court deems proper.

A4679

## Certificate of Filing

I certify that on (date), a copy of this previously served motion has been

furnished to the Third District Court of Appeal by eDCA e-filing and has been

furnished to Gifford Williams Haakon Clifford, Esq., and Barnard Law Offices, L.P.

by electronic mail in accordance with Fla. R. Jud. Admin. 2.516(b)(1).


/s/ Louisa Ramsammy, Esq.
**LOUISA RAMSAMMY, ESQ.**
*Attorney for Appellee*
200 S. Andrews Avenue, Suite 501
Ft. Lauderdale, FL 33301
Ph: (954) 248-2920
Fax: (954) 248-2134
E-Mail: pleadings@fontnelson.com
Florida Bar No.: 0119351

Pursuant to Rule 3-7.1(f), Rules of Discipline, you must execute the appropriate disclosure paragraph below and return the form to this office by **April 26, 2018.** The rule provides that the nature of the charges be stated in the notice to your firm; however, we suggest that you attach a copy of the complaint.

## CERTIFICATE OF DISCLOSURE

I HEREBY CERTIFY that, on this __21__ day of __May_____, 201_8_, a true copy of the foregoing disclosure was furnished to __Frantz Nelson_____, a member of my present law firm of __Font - Nelson PLC_____, and, if different, to _____, a member of the law firm of _____, with which I was associated at the time of the act(s) giving rise to the complaint in The Florida Bar File No. 2018-50,744 (17B).

Jose Pete Font

## CERTIFICATE OF DISCLOSURE
(Corporate/Government Employment)

I HEREBY CERTIFY that on this _____ day of _____, 201____, a true copy of the foregoing disclosure was furnished to _____, my supervisor at _____ (name of agency), with which I was associated at the time of the act(s) giving rise to the complaint in The Florida Bar File No. 2018-50,744 (17B).

Jose Pete Font

## CERTIFICATE OF NON-LAW FIRM AFFILIATION
(Sole Practitioner)

I HEREBY CERTIFY to The Florida Bar on this _____ day of _____, 201____ that I am not presently affiliated with a law firm and was not affiliated with a law firm at the time of the act(s) giving rise to the complaint in The Florida Bar File No. 2018-50,744 (17B).

Jose Pete Font

A4681

# Response to Florida Bar Complaint No.: 2018-50, 179

# FONT & NELSON

October 15, 2018

**Sent via email and certified mail:**
Joi L. Pearsall, Esq.
The Florida Bar
1300 Concord Terrace
Suite 130
Sunrise, Florida 33323

Re:  **Response to Bar Complaint**
     The Florida Bar File No. 2019-50, 179

Greetings:

Please allow this correspondence to serve as a response to the Florida Bar's inquiry regarding the Third District Court of Appeal's decision that was issued on August 1, 2018.

Despite the lurid sexual innuendos set forth by Brandy Raulerson, Esq., and the managing partner of her Firm, Andrew Barnard, Esq., a careful review of the subject petition for injunctive relief ("Stalking Injunction") reveals that there is not even an allegation that the Respondent, Jose P. Font, Esq., ever had any social/sexual contact or interaction of any kind with Raulerson, whether by text message, e-mail, phone calls, public encounters, private encounters, social media, third-parties, mailings, notes or otherwise. Hence, the appellate court specifically held in its opinion that there were no indicators of stalking. Moreover, and setting aside some non-specific time, date, or method allegation (which is required by law) that Font threatened the use of drones, there was not a singular act alleged that would not have been within the immediate jurisdiction of the trial courts that were overseeing the litigation in which Raulerson and Font had the sole and limited form of interaction as counsel for the parties.

Admittedly, Raulerson and Barnard never sought relief with the presiding trial courts in which they were serving as counsel for the parties, and this was naturally so considering there was no merit or truth to their allegations of misconduct against Font. Whether at the trial court or appellate level, it is important to emphasize that it was adjudicated that there was no "just cause" for the Stalking Injunction, and in so doing, the adjudication was predicated on the courts accepting all allegations, testimony, and proffers in a light most favorable to Raulerson and Barnard. This standard of proof was applied because the Stalking Injunction was dismissed pursuant to a Motion to Dissolve, which by law, the trial court and appellate court were required to apply the standard of proof **without even considering any rebuttal evidence on the part of Font.** This standard of review, coupled with the courts' general discussion/contemplation of the facts that were carefully crafted to suggest misconduct that would be proven untrue if stated in a form that would be readily verifiable due to the limited interaction between Font and Raulerson, created the unfortunate reality of leading most readers to believe that the trial court and/or the appellate court had concluded that there was some type of wrongdoing on the part of Font.

200 S. Andrews Ave., Suite 501, Ft. Lauderdale, FL 33301 • Telephone: (954) 248-2920 • Fax: (954) 248-2134
www.fontnelsonfirm.com

*Rule 2.516 designation e-mail: pleadings@fontnelson.com et. al*

A4683

It goes without saying that the appellate court does not have general jurisdiction, and the references to concerns of misconduct - **if the allegations were true** - does not lend a scintilla of credence to the veracity of the scandalous allegations or a finding of misconduct on the part of Font, who as stated, did not even present rebuttal evidence due to the finding of no just cause in the context of a motion to dissolve.  The only truth is that Raulerson and Barnard abused the family court system to gain an advantage in civil litigation wherein they were forced to withdraw as counsel or dismiss suits due to their fraudulent nature, and they decided to retaliate against Font in the most unbelievable, shameful and unprecedent form possible. In point of fact, and in relation to the putative stalking, Barnard and Raulerson self-admittedly never sought relief from the presiding trial courts in which they were Font's opposing counsel.  Font's limited interaction with Raulerson was isolated to said context, and just weeks before the Stalking Injunction was filed, the Honorable Judge Echarte held on the record and in open court that the evidence of fraudulent conduct on the part of Barnard and Raulerson were such that he was referring the matter to the Florida Bar and ordered them to produce all materials and items that were related to their financial relationship with a third-party who their very own former client had attested partook in the staging of fraudulent insurance claims with the aid and assistance of Barnard and Raulerson. Raulerson and Barnard, presumably knowing that their disclosures would serve to fully establish the stated scheme of staging fraudulent homeowner's insurance claims, defied in Judge Echarte's order in absolute form, and instead decided to file the Stalking Injunction on July 31, 2017. This was the very day that they knew by way of notices of unavailability filed by Font in hundreds of cases, that he would not be available for a period of two weeks due to a pre-planned vacation.

As to the motivation for the shameful course of action pursued by Barnard and Raulerson, and the evidence pending against Raulerson and Barnard in relation to their complicity in the submission of fraudulent homeowner's insurance claims that Font was defending and pursuing affirmative relief on behalf of his clients, the predicate basis for Judge Echarte's finding that the evidence presented by Font against Raulerson and Barnard supported an immediate referral to the Florida Bar consisted of, amongst other things, the affidavit of their former client (who they threatened, mocked in open court, filed a frivolous criminal complaint against, threatened her subsequent counsel, and filed a Bar Complaint against her subsequent counsel that was dismissed) stated as follows:

1.   I am over eighteen (18) years of age and suffering from no disease or defect that would render me to be incompetent and otherwise sui juris.

2.   I make this affidavit from my personal first hand-knowledge and after being duly advised by my counsel regarding same.

3.   I am a named Plaintiff in the action know BARBARA & HECTOR SANTOS vs. SOUTHERN FIDELITY PROPERTY & CASUALTY, INC. ("SFPC"), Case Number: 2015-022872 CA 20, which is currently pending before the Honorable Judge Pedro Echarte of the 11th Circuit Court of Dade County, Florida.

A4684

4.    On September 2, 2016, I appeared for a deposition in the above referenced matter.

5.    With the exception of a brief in person meeting with Andrew Barnard (at which time I was asked to simply fill out paper work and was given a very cursory representation of the services he was going to provide), and a meeting right before my deposition with Brandy Raulerson, an attorney from the Barnard Law Offices, I had never met or otherwise communicated with any lawyer from the Barnard Law Offices regarding any substantive discussion about the facts and legal issues that were the subject of the pending litigation.

6.    Consequently, throughout the course of the lawsuit I had no understanding as to why my claim was not covered under the policy. Furthermore, I had no understanding as to the fact that the Barnard Law Offices was to present my claim to the Court and my insurer under false and fraudulent pretenses.

7.    Shortly after my deposition, I became aware of the attached Motion to Disqualify, et. al., which had been filed by SFPC, which is attached hereto as Exhibit A.

8.    At said point I was advised by the Barnard Law Offices that they were withdrawing from my case, and in so doing, they failed to disclose any specific basis for which they were withdrawing as my counsel. Also, they did not provide me any advice or recommendations as to how I should proceed under the circumstances.

9.    However, I then retained Grissell T. Carbonell, Esq. to represent me in my case, and after being duly advised of the factual and legal issues that were raised in the Motion to Disqualify, et. al., I voluntarily decided that SFPC was entitled to final judgment based on the fraudulent and deceptive practices that were described in the motion, which as alluded to above, were induced by my reasonable reliance on the Barnard Law Firm that I now know was simply acting in their own interest and those of various third-parties that they were working in conjunction with as described in more detail below.

10.    I also voluntarily decided, with advice of counsel, that I would not dispute that SFPC was entitled to attorney's fees and costs for having to defend a frivolous and fraudulent claim, and that instead, as matter of justice I would ask for the mercy of the Court and that consideration be provided as to whether the Barnard Law Offices should be responsible in part or in whole for the sanctions based on the fact that they induced and orchestrated the fraudulent and frivolous claim for their own self-interest and with no regard for my own.

A4685

11.      I have set forth below some of the reasons for which I am now of the conclusion that the Barnard Law Offices acted in a fraudulent, frivolous, deceptive, unfair and unethical fashion:

a.      The first ever I met with a lawyer to discuss my claim in any meaningful fashion was the day before my scheduled September 2, 2016 deposition. The attorney that I met with was named Brandy Raulerson, who identified herself as a lawyer from the Barnard Law Offices. Rather than asking me to provide a truthful account of what had occurred and the facts and circumstances surrounding the claim/event in question and the involvement of various third parties, throughout the course of my pre- deposition meeting Mr. Raulerson insisted that I testify in relation to the facts as she saw fit even though she did not have any actual knowledge of truth of the matters at hand. For example, the first person I ever contacted (by way of a phone call) in relation to the claim and per a referral of one of my ex-client's son, was a person who identified himself as Maxwell Barnard ("M. Barnard") of the Barnard Law Offices. When I spoke to M. Barnard, he did not at that point in time make any arrangements for me to retain his law firm. Rather, he directed me to contact a person named Michael Carrillo ("M. Carrillo"), who I now understand to be working with Omni Claims Consultants, LLC. When I first met with M. Carrillo, he had me sign documentation, which based on his representation, was for having M. Carrillo serve as my public adjuster and representative throughout the claim process. Thereafter, M. Carrillo fully directed, without my informed consent, various vendors/persons to come to my house to supposedly perform plumbing repairs, drying services and various other tasks. I was always led to believe that all these services would be fully covered by my insurance company, and that the damages that they caused while supposedly protecting my home, would also be fully by my insurance company. It was not until the date of my deposition that I came to learn that the Barnard Law Office would be used by M. Carrillo to represent our collective interest in this matter, and that M. Carrillo and the Barnard Law Offices would share a percentage of the insurance proceeds that they stated would be received. Contrary to the truth and in relation to the sequence of events described above, during my pre- deposition meeting with Brandy Raulerson, she insisted repeatedly and emphatically that I not disclose that my first point of contact was M. Barnard. Instead, and for reasons that were unknown to me at the time, she advised me that I needed to testify that M. Carrillo was my first point of contact and that he was the one that was referred to me by my ex-client's son. Consequently, and believing that I should follow my lawyer's advice, I testified in this regard. Further, she insisted that I represent that the nature of the loss occurred as a one-time sudden

4

accidental flooding event which was repaired by a plumber promptly thereafter. However, and as I eventually acknowledged during my deposition when questioned in detail during my deposition, the moisture conditions/damages in question were continuous and ongoing for years and the alleged plumbing repair performed/directed by M. Carrillo did not serve in any form to preclude the damages which have slowly served to destroy my home over the course of years. Simply put, I fully understand now that Ms. Raulerson's desire to have me follow her own script of the facts surrounding the claim, resulting damages and the sequence and nature of various third-parties that become involved in the claim, led me to partake in the Barnard Law Offices ultimately desire to have me serve to submit an insurance claim under false, deceptive, unfair and ultimately fraudulent pretenses.

b.   Prior to my September 2016 deposition, Ms. Raulerson advised me that during my deposition, I was to generally limit what information I was to provide to defense counsel, such as: simple facts as benign as my date of birth; the telephone numbers and identification of those individuals who referred me to the Barnard Law Offices, etc. Further, I was led to believe by Ms. Raulerson that I have no general duty to cooperate, so my deposition testimony as transcribed is reflective of that. I was  also advised to testify that I personally hired the handyman/plumber that came to me residence, when in fact M. Carrillo was the person who retained the handyman/plumber. In sum, based on Mr. Raulerson's insistence, the overall deposition testimony I gave was incomplete and contained falsities, since my pre-deposition meeting with Mr. Raulerson left me confused throughout my deposition as whether the follow her directions or to state that facts as I know them to be.
c.       At no point during my deposition or until they abruptly withdrew as my counsel did Ms. Raulerson or anyone from the Barnard Law Offices provide me with any advice on how to take corrective action or to present the truth. Further, I was not advised that my continued testimony and pursuit of the false claim could subject me to civil and criminal penalties. This advice that Barnard Law Offices failed to provide, was provided when I retained Ms. Carbonell as my new counsel.

d.   Prior to the lawsuit being filed, there was a payment made by the insurance company and the distribution of the proceeds were divided through the Barnard Law Offices per terms and conditions that are unknown to me at this point. Although my new attorney has requested documentation about a "closing statement," which would reflect the manner upon which the proceeds were distributed, to this very date the Barnard Law Offices has refused to provide me with the documents or information about the distribution of the insurance

A4687

proceeds or the financial interests of M. Carrillo or the company that he supposedly worked for.

e.     Also, prior to suit being filed, it is important to note that I now know and understand that M. Carrillo was not operating as a licensed public adjuster pursuant to Florida Statutes and Florida Administrative Code, even though I was lead to believe he would aide and assist me with the submission of my insurance claim. Further, as reflected in my deposition testimony, the estimate that was submitted concealed the identity of person who created it. To date, this fact has neither been disclosed to me nor has anyone provided me with a basis for this lack of disclosure.

f.     At no time after my claim was made, including after pre-suit payment, did M. Carrillo, or anyone from the Barnard Law Offices tell me the necessary steps to determine the exact amount of monies needed to make the repairs. In fact, the agreement that M. Carrillo presented to me was such that he would receive a percentage of the insurance benefits as payment for his services and he would in turn recover enough monies from the SFPC whereby I could pay his contingency interest and still perform all the repairs with the remaining monies. In other words, there was an agreement from the onset that he would intentionally inflate the loss in the estimate to recover the expense of a representative that was acting unlawfully by engaging in the unlicensed practice of public adjusting.

g.     During my deposition, when asked if asked if my tile flooring had sustained any damages, I testified there was no damage whatsoever to my tile flooring and that I had no clue as to why M. Carrillo and/or the Barnard Law Offices would try to obtain monies from SFPC under false pretenses. Likewise, at no time did anyone explain why an estimate was being presented for approximately $45,000.00 and to this day I still do not know who made the decisions to make these representations without my authorization or why no one approached me to have a substantive discussion as to why my tile, or other areas of my house, were included in the estimate even though they were not damaged.

h.     Additionally, when I signed the answers to SFPC interrogatories, as I testified during my deposition, I had no understanding as to the contents to the questions or the answers that were prepared for me. Further, at no point was it explained to me to ensure the answers to the interrogatories were based on my personal knowledge and verification and that by simply signing the interrogatories that were prepared in furtherance of the false claim, I would be subjecting myself to potential civil and criminal penalties.

A4688

i.      Being that the moisture conditions in question continued unabated after M. Carrillo supposedly performed/directed plumbing repairs to be performed, and considering the location where the supposedly pluming repair was performed, I now understand that the repair performed was for staging the appearance of a sudden and accidental plumbing loss that flooded my home. At no point did M. Carrillo, Omni, the Barnard Law Office or anyone else ever even bother to confirm that the area of repair was in fact where the moisture came from and continued to come from as the years passed, nor did they ever indicate to me that the insurance company would want to inspect the condition before it was altered.

j.      Even though M. Carrillo directed without my authorization to have mold assessment services performed at my residence, to date it has neither been disclosed to my be the Barnard Law Offices, M. Carrillo or anyone on their behalf that findings of this assessment indicated a situation that could be hazardous to the health of myself and my children nor that I needed to take any precautionary measures. All indications are that the mold services that M. Carrillo directed to be performed were done to preserve the financial interest of M. Carrillo, the Barnard Law Firm and/or unknown third parties without any regard for the health of myself and my family. In fact, to date, my family is being confronted with the consequences of the Barnard Law Offices' and/or M. Carrillo's actions/inactions as my child now suffers from health conditions related to the air quality present in my home. This condition has only become worse with time since the plumbing services that M. Carrillo direct to be performed has done nothing to abate the presence of moisture in my home.

k.      As referenced earlier, it was my understanding that Omni/Carrillo would be a company that would serve as my public adjuster and they would aide and assist in the adjustment and submission of the claim. However, and for the reasons stated in the attached Motion to Disqualify, it is evident that there was a concealed cross-referral relationship between Omni/Carrillo, the Barnard Law Offices and the various other persons that were involved at their direction, and that this relationship continues to be concealed since the Barnard Law Offices refuses to provide any of the retainer agreements that I signed. Although Andrew Barnard has represented that these requested items would be provided, he not only refuses to provide them, he also refused to provide any basis for why they are not being provided. As I've represented through my counsel and to Mr. Barnard, I have in fact waived any attorney client privilege that may have existed between the Barnard Law Offices and myself.

A4689

l.      As it relates to the submission of a Sworn Proof of Loss ("SPOL") which is attached as Exhibit B, and discussed in the Motion to Disqualify, et. al., I was directed to sign the SPOL and have it notarized even though the substance of the SPOL was never explained to me in a meaningful fashion and I was not provided any documentation or information which would allow me to draw an understanding of the contents of the SPOL. Although I did in fact sing the SPOL, when I arrived of the Barnard Law Offices to deliver the documents as requested, I was told by staff members of the Barnard Law Offices that that I needed to include my husband's signature. At that point in time I signed the document for my husband and handed it to the Barnard Law Office's staff without an understanding of the fact that by so doing I was presenting a document which purported to be a sworn attestation on the part of my husband with regards to the claim that I was presenting. Now that my attorney has explained the importance of the document, I understand the significance of what transpired and would have never engaged in such conduct, if not induced by the Barnard Law Office's staff.

12.    Due to the actions and inactions of the Barnard Law Offices, Carrillo/Omni, and various person they associate with, I have suffered substantial harm in various forms, including but not limited to the following:

a.     Although I was led to believe that M. Carrillo would take the necessary actions to protect my interests, and I am now left with a home that is in a complete state of disrepair from the continuous and ongoing moisture conditions that have been in existence for years even though it is my understanding that Carrillo directed over $15,000.00 worth of alleged services for plumber repairs, mold assessments, water remediation, etc. and such services were clearly useless in light of the fact that the condition shave worsened over time and now I cannot reasonably pursue any recovery from my insurance company since it has now been made known to me by my new counsel that the claim is not covered due to a multitude of reasons, including the fact that the various third-parties induced/facilitated the submission of fraudulent and frivolous claims, and that the policy does not provide coverage for damages that occur due years of moisture exposure and for conditions that are not promptly repaired.

b.     The litigation that was pursued by the Barnard Law Offices was without my informed consent, and if I had any meaningful understanding of the facts at hand, I would not have presented the claim and would not be in the current situation that has caused a tremendous amount of financial hardship, mental strain and what is understood to be a significant health issues for my child who is being exposed to the mold that has developed because of the fact that I was led to believe that M. Carrillo would perform the necessary tasks to protect my home.

A4690

    c.   It is evident to me that the Barnard Law Offices simply abandoned my interests when I acknowledged the truth of the facts surrounding the claim and which I came to later learn ran in direct conflict with theory of loss that he set forth throughout the claims process and this litigation. Rather than advising me to take certain corrective action, or themselves taking corrective action, the Barnard Law Offices later threaten me and my lawyer simply because we insisted on being forthright with SFPC.

    d.   When the Barnard Law Offices withdrew as my counsel, I was forced to immediately retain a lawyer because trial was scheduled to take place at that point and I simply had no idea how to deal with the situation at hand. I have incurred a tremendous expense and burden therefore, and this burden and expense continues until this date.

    e.   The inducement on the part of the Barnard Law Offices as set forth in the attached Motion to Disqualify, et. al., which state the facts which were misleading to my insurer's evaluation of the claim and served to place me in a position I had to defend against the consequences therefrom. This has created tremendous amount of anxiety for myself as well as my husband Hector Santos who is also a named Plaintiff in the actions, who had no knowledge regarding the facts that the Barnard Law Offices was pursuing a claim on his behalf that he was named as a party that was weeks away from trial.

. . . .

    On August 21, 2017, Judge Echarte ultimately stayed the referenced case while emphasizing the fact that Barnard was engaged in pattern of conduct that was intended to harass Font, at which point shortly thereafter, the destructive and devastating forces of Barnard's and Raulerson's Stalking Injunction led Font into a position wherein he had to withdraw his legal representation of insurers in over 700 claims/suits.  This led to hundreds of thousands of dollars in lost monthly earnings for Font and his Firm, and Barnard and his co-conspirators reveled in their victory (and financial windfall that followed when they unjustly and consequently obtained millions of dollars in settlement proceeds from Font's former clients that were inevitably compromised) by way of the following unsolicited emails, which further draw perspective as to the quality of individuals that Font was forced to endure as a consequence of doing nothing more than zealously representing the interests of insurers who were being defrauded or presented with frivolous claims:

From: Ben Alvarez [mailto:ben@acfdlaw.com]
Sent: Friday, October 27, 2017 4:49 PM
To: Jose Font jfont@fontnelson.com
Cc:  Leonardo DaSilva <LDaSilva@acfdlaw.com>;  J.  Bruno de la Fuente <jbf@acfdlaw.com>;
Jorge  Carbonell  <jlc@acfdlaw.com>;  Paul  B.    Feltman  <PFeltman@acfdlaw.com>;  Roniel

A4691

Rodriguez IV <Ron@RJRfirm.com>; Eric Castillo <EC@MiaLawyers.com>; Frantz Nelson <fnelson@fontnelson.com>; Jaime Martin <jmartin@fontnelson.com>; Bryan T. Fischer, Esq. <bfischer@fontnelson.com>; Sara Ortiz <sortiz@fontnelson.com>; Chris Martinez <CMartinez@acfdlaw.com>; Juan Quintana <jcquintana@acfdlaw.com>; Nick Grandal <NGrandal@acfdlaw.com>; Ryan LeMontang <rlemontang@acfdlaw.com>; Brian Costa bcosta@acfdlaw.com

Subject: RE: J. Rosario Perez & Rosa Perez v. Southern Fidelity

Dear Jose:

I was advised that during a calendar call earlier this afternoon – in front of Judge Hogan-Scola (who was covering for Judge Walsh) – one of your associates announced in two separate cases that your firm was being substituted as counsel for Southern Fidelity. She cited differences between your firm and the carrier as the reason for the withdrawal. I was surprised to hear this, seeing how you've become Southern Fidelity's defense counsel of choice in South Florida. As such, please advise whether you will also be substituted as counsel in this action. Thank you for your anticipated prompt response.

Have a wonderful weekend!

Ben

Benjamin R. Alvarez, Esq. Alvarez Carbonell CookeFeltman & DaSilva PL
75 Valencia Avenue - 8th Floor
Coral Gables, FL 33134 Telephone: 305.444.5885
Facsimile: 305.444.8986
E-Mail: Ben@acfdlaw.com
www.ACFDLAW.com

. . . .

From: Ben Alvarez [mailto:ben@acfdlaw.com]

Sent: Saturday, October 28, 2017 12:14 PM

To: Jose Font jfont@fontnelson.com

Cc: Leonardo DaSilva <LDaSilva@acfdlaw.com>; J. Bruno de la Fuente <jbf@acfdlaw.com>; Jorge Carbonell <jlc@acfdlaw.com>; Paul B. Feltman <PFeltman@acfdlaw.com>; Roniel Rodriguez IV <Ron@RJRfirm.com>; Eric Castillo <EC@MiaLawyers.com>; Frantz Nelson <fnelson@fontnelson.com>; Jaime Martin <jmartin@fontnelson.com>; Bryan T. Fischer, Esq. <bfischer@fontnelson.com>; Sara Ortiz <sortiz@fontnelson.com>; Chris Martinez <CMartinez@acfdlaw.com>; Juan Quintana <jcquintana@acfdlaw.com>; Nick Grandal <NGrandal@acfdlaw.com>; Ryan LeMontang <rlemontang@acfdlaw.com>; Brian Costa <bcosta@acfdlaw.com>; Bryant Paris <BParis@acfdlaw.com>; Amy Arbide <AArbide@acfdlaw.com>; Daniel Perez <DPerez@acfdlaw.com>; Kira Grossman <kgrossman@acfdlaw.com>

A4692

Subject: RE: J. Rosario Perez & Rosa Perez v. Southern Fidelity

Dear Jose:

Based on your prior conduct of always responding to my emails with great celerity and acrimony, I will interpret your silence to mean only one thing: you have indeed been terminated on all cases you were handling by Southern Fidelity and Capital Preferred. However, if I am remiss, please confirm in writing at your earliest convenience.

In the event that I am correct in my assumption, what a shame! You started your firm less than nine months ago and you lost your two biggest – and pretty much only – clients in one draconian and supersonic sweep of the leg! But don't get down on yourself; according to Bloomberg, 8 out of 10 entrepreneurs who start businesses fail within the first 18 months.

I guess you were right when you told me earlier this month "enjoy your half- time victory dance while you can." I had no idea that what you meant was that your days were numbered because you were about to be pulled from the match and replaced. I was really looking forward to trying these cases to a jury with you. It's shame you always sought continuances; now we will never have had the experience of a jury trial together.

Moreover, please advise whether you were also terminated from the matter where you represented plaintiffs Southern Fidelity and Capital Preferred suing my client UnitedWater for purported FDUPTA claims, in front of Judge Bowman in Broward Case No.: 16-010172. Thank you in advance for your prompt response. I wish you the best in your future endeavors and look forward to hearing from your replacement counsel soon.

Have a great weekend!

Ben

Benjamin R. Alvarez, Esq.
Alvarez Carbonell Cooke Feltman & DaSilva PL
75 Valencia Avenue - 8th Floor
Coral Gables, FL 33134 Telephone: 305.444.5885
Facsimile: 305.444.8986
E-Mail: Ben@acfdlaw.com www.ACFDLAW.com
. . . .

From: Andrew Barnard [mailto:abarnard@barnardlawlp.com]

Sent: Saturday, October 28, 2017 1:16 PM

To: Alan Blose <ablose@fontnelson.com>; Jose Font <jfont@fontnelson.com>
Cc: Joe Ligman <joeligman@bellsouth.net>; Ben Alvarez <ben@acfdlaw.com>; Roniel Rodriguez <Ron@rjrfirm.com>

Subject: Motion for protection hearing on Monday morning at 8:30 a.m. – STATUS

Is the 8:30 a.m. Monday morning MPO necessary in light of the fact that you have been fired by Capital Preferred?

A4693

Please send in a notice of withdrawal of the subpoenae.

Andy

Barnard Law Offices LP Andrew C. Barnard, Esq.
9655 South Dixie Highway, Suite 200
Miami, Fl. 33156
Tel: 305-665-0000
Fax: 305-669-9666, or 305-328-4866
. . .

From: Ben Alvarez [mailto:ben@acfdlaw.com]

Sent: Saturday, October 28, 2017 1:43 PM

To: Andrew Barnard abarnard@barnardlawlp.com

Cc: Alan Blose <ablose@fontnelson.com>; Jose Font <jfont@fontnelson.com>; Joe Ligman <joeligman@bellsouth.net>; Roniel Rodriguez Ron@rjrfirm.com

Subject: Re: Motion for protection hearing on Monday morning at 8:30 a.m.
- STATUS

Dear Andy:

Was Jose Font terminated in this file only or all files for Capital Preferred & Southern Fidelity? Please confirm. Thank you, Ben

. . . .

From: joeligman [mailto:joeligman@bellsouth.net]

Sent: Sunday, October 29, 2017 3:38 PM

To:   Alan   Blose   <ablose@fontnelson.com>;   Andrew        Barnard abarnard@barnardlawlp.com

Cc: sharkhunt3@aol.com; Jennifer Wilds <jwilds@fontnelson.com>; Jose   Font <jfont@fontnelson.com>; Nicole Kronen <nkronen@fontnelson.com>; Vanessa Gomez <vgomez@fontnelson.com>

Subject: Re: NOVAK, JOHN VS CAPITOL PREFERRED INS CO INC - CACE-16-013454

Mr. Blose.
Your moron says that it is your decision to withdraw.
Is the a true statement or was your firm terminated by Capitol.
Please clarify the statement in order for me to file a future bad faith case. Thank you
Joe Ligman

A4694

. . . .

From: joeligman [mailto:joeligman@bellsouth.net]

Sent: Monday, October 30, 2017 10:09 AM

To: Alan Blose <ablose@fontnelson.com>; Andrea Ramos <aramos@fontnelson.com>; Jose Font <jfont@fontnelson.com>; Mike Seward <sharkhunt3@aol.com>

Subject: Omar Escalona

Good morning Ms. Ramos,
Please advise if your firm is also terminated on this case. I want deposition dates for the corporate representative and all of your experts. The court order states that you have 5 days to give me dates within the next 30 days. Also, please contact me to agree on a trial date.
Finally, can we do an agreed order granting my motion for sanctions and awarding our entitlement to attorney fees on your bad faith motion for disqualification?

Thank you Joe Ligman

. . . .

From: joeligman [mailto:joeligman@bellsouth.net]

Sent: Friday, November 03, 2017 3:44 PM

To: Pleadings <pleadings@fontnelson.com>; Jose Font <jfont@fontnelson.com>; Pete Jose <font33330@yahoo.com>; Mike Seward <sharkhunt3@aol.com>

Subject: Omar Escalona and John Novak

Hello Mr. Font,

I hope you are doing well.
Please advise when and to whom the files will be transferred to. In addition, on the Escalona file, Please give me deposition dates in Zjanuary to depose you and Mr. Fischer. If I do not hear from you by next Zmonday by 12 AM I will unilaterally set your deposition.
Thank you Joe Ligman

. . . .

On Nov 29, 2017, at 7:46 PM, Jaime Martin <jmartin@fontnelson.com> wrote:

Good evening all,

13

A4695

Our office would like to submit the attached proposed agreed order on Font & Nelson's Motion to Withdraw as Counsel. Mr. Wank's office has already agreed to same. Please advise if you have any objections to the relief sought herein and if so, please advise as to your specific objections.

Best regards,

Jaime Martin, Esq.
Attorney
<image001.png>
200 S. Andrews Ave, Suite 501 Ft. Lauderdale, FL 33301 Paralegal
Melissa Shaunaman

MSchaunaman@fontnelson.com Ph: (954) 248-2920
Fax: (954) 248-2134
E-Service: pleadings@fontnelson.com
. . . .

From: Ben Alvarez [mailto:ben@acfdlaw.com] Sent: Wednesday, November 29, 2017 8:40 PM

To: Leonardo DaSilva <LDaSilva@acfdlaw.com>

Cc: Jaime Martin <jmartin@fontnelson.com>; Brian Costa <bcosta@acfdlaw.com>; gary@pathtojustice.com; steve jaffe <steve@pathtojustice.com>; jwank@kelleykronenberg.com; dhenry@kelleykronenberg.com; Melissa Schaunaman <mschaunaman@fontnelson.com>; Jose Font <jfont@fontnelson.com>; Frantz Nelson <fnelson@fontnelson.com>; Ron 💰 Rodriguez <ron@rjrfirm.com>; J. Bruno de la Fuente <jbf@acfdlaw.com>; Chris Martinez <CMartinez@acfdlaw.com>; Reggie Morris rmorris@pmains.com

Subject: Re: Southern Fidelity v. United Water Restoration

Leo:

Brother, you forgot to copy Jose or Frantz. Apparently, since they switched sides to the plaintiff's world and Jose is no longer screaming that every claim is "fraud fraud fraud," he no longer gets copied on these emails. I remember when he lied to Sam Ruiz Cohen and Rosa Rodriguez, which cost his client millions of dollars.

That's what happens when you spend your entire career behaving unscrupulously attacking good people on behalf of insurance carriers, only to dupe his own client - the carrier - into paying Jose and his firm more fees, while simultaneously exposing the carrier to bad faith because of Jose's improprieties and fraudulent behavior.

At the end of the day, the only one who wins is Jose. His client gets tagged for millions of dollars2 & Jose laughs all the way to the bank, by charging millions in unnecessary fees. As such, you can understand why we will indeed oppose your withdrawal.
Have a great evening.

A4696

Ben

PS - I copied Reginald Morris, ESQ. to ensure clarity.

. . . .

Thus, and justly so, as previously represented to the Florida Bar in related/associated Complaints (Complaint Nos.: 2018-50,179 (17B); 2018-50,189 (17B); 2018-50,370 (17B)), Font is fully intent on pursuing the appropriate Bar Complaints once the associated legal action is pursued to conclusion against Raulerson, Barnard, and their co-conspirators. As of today, and having been forced once again to set aside his practice in order attend to the consequences and harm associated with Barnard's and Raulerson's grotesque and unethical conduct, Font has finalized and filed a malicious prosecution (the drafting of which commenced nearly a year ago, but due to the consideration of his clients that run primary, Font did not have an opportunity to finalize it until now) suit against Raulerson and Barnard in Broward County, and the case is known as *Font v. Raulerson & Barnard*. As cited therein, the malicious prosecution of the Stalking Injunction is further evidence and detailed by the following exhibits to the complaint.

(1.)    **Exhibit 1**:    Petition for ex-parte Stalking Injunction;

(2.)    **Exhibit 2**:    Ex-parte Order temporarily granting the Stalking Injunction;

(3.)    **Exhibit 3**:    Motion which falsely alleged that Font had violated the Stalking Injunction, and in its claim for relief, sought to deprive Font of his liberties by incarcerating him for a period of 90 days;

(4.)    **Exhibit 4**:    Font's Motion to Dissolve the Stalking Injunction;

(5.)    **Exhibit 5**:    The October 2, 2017, transcript of the evidentiary hearing on Font's Motion to Dissolve the Stalking Injunction, at the conclusion of which, the Court held, on the record, that even if it accepted in unrebutted form all of the Defendant's attestations and proffers as true - which it was required to do per the legal standard of proof at hand - there was no "just cause" for the Stalking Injunction;

(6.)    **Exhibit 6**:    The Defendants initial appellate brief which sought to reverse the trial court's finding that there was no "just cause" for the Stalking Injunction;

(7.)    **Exhibit 7**:    Font's answer brief which supported that there was no just cause for the civil injunction;

(8.)    **Exhibit 8**:    The opinion from the Third District Court of Appeals which affirmed the trial court's ruling as stated. The general secondary considerations contemplated at the trial level and on appeal, were never subject to evidentiary adjudication because, on its face, the Stalking Injunction was found to be without just cause and thereby subject to dismissal without further proceedings;

(9.)    **Exhibit 9**:    Motions filed against Font which sought the appointment of a special magistrate and/or sanctions based on the putative evidentiary consideration of the temporary and ex-parte Stalking Injunction;

(10.)    **Exhibit 10**:    Order entered by retired Judge Rosa Rodriguez after hearing argument by the Defendant(s) premised upon the alleged putative misconduct of Font that served as the foundation of the Defendants' Stalking Injunction;

A4697

(11.)  **Exhibit 11**:    Petition for Writ of Certiorari that Font was forced to file as a consequence of the aforementioned order, which required Font to submit to a deposition and pay the cost of a magistrate, who was appointed to oversee his deposition in a case wherein he was not a fact witness, expert witness, and serving as nothing more than a lawyer on behalf of the insurer. For the reasons cited therein, there was no basis in fact and/or law to justify his deposition, sanctions for not submitting to an unlawful order – that inherently violated the attorney-client relationship – or his incarceration for not submitting to an unlawful order that by law he was obliged to seek certiorari relief before acquiescing;

(12.)  **Exhibit 12**:    As it relates to the referenced deposition and sanctions order, a motion filed by BLO in an effort to incarcerate Font for a period of 90 days for not submitting to deposition; and

(13.)  **Exhibit 13**:    The Third District Court of Appeal's Order granting Font's Petition for Writ of Certiorari, thereby precluding the trial court from sanctioning or incarcerating Font as demanded in connection with the sanctions and unlawful deposition order.

Thank you for your time and attention, and please let us know if you wish us to address or clarify any further concerns and considerations.

Sincerely,

/s/ *Jose P. Font*
Jose P. Font, Esq.
Fla. Bar No.: 0738719

16

A4698

# EXHIBIT 1 to
# Response to Florida Bar
# Complaint No.: 2018-50, 179

# SERVICE ACCRUES

(Cover Sheet)

SHERIFF OF MIAMI-DADE COUNTY / CIVIL PROCESS BUREAU
OVERTOWN TRANSIT VILLAGE SOUTH, 601 NW 1 COURT, 9TH FLOOR, MIAMI, FL 33136

DATE: **JUL 3 1 2017**　　　　CASE NUMBER: A-18391 FC04

*Brandy Elizabeth Roberson* PETITIONER　　　*Jose P. Tort* RESPONDENT

PURSUANT to the Ex Parte Temporary/Permanent Injunction entered by this court, a certified copy of this Injunction and copies of the following are provided for effecting service on the above mentioned respondent in this cause:

| | |
|---|---|
| ☒ PETITION FOR INJUNCTION | [ ] ORDER OF TRANSFER |
| ☒ EX PARTE TEMPORARY INJUNCTION | [ ] PERMANENT INJUNCTION |
| ☒ ORDER TO APPEAR FOR HEARING | [ ] ORDER OF REFERRAL |
| [ ] FINANCIAL AFFIDAVIT | [ ] MOTION AND ORDER TO EXTEND |
| [ ] UCCJA AFFIDAVIT | TEMPORARY INJUNCTION AND ORDER TO |
| [ ] ORDER DENYING PETITION FOR EX PARTE | APPEAR FOR HEARING |
| TEMPORARY INJUNCTION | [ ] ORDER TO: _____ |
| | _____ |
| | [ ] OTHER: _____ |

HARVEY RUVIN / CLERK
CIRCUIT AND COUNTY COURTS
MIAMI-DADE COUNTY, FLORIDA
BY: _____
DEPUTY CLERK

RETURN TO THE DOMESTIC VIOLENCE UNIT AT:

SOUTH DADE GOVERNMENT CENTER
10710 SW 211 ST
MIAMI, FL 33189

***LAW ENFORCEMENT SERVICE INSTRUCTIONS***

ANY LAW ENFORCEMENT OFFICER CERTIFIED UNDER F.S. §943.1395 MUST SERVE THIS INJUNCT ON BY:

1. COMPLETING THE SERVICE INFO BELOW **AND** ON **BOTH** PETITIONER AND RESPONDENT'S COPIES OF THE INJUNCTION;
2. HANDING ALL PAPERWORK EXCEPT THIS FORM TO THE RESPONDENT.

ALL LAW ENFORCEMENT OFFICERS MUST COMPLETE THIS SECTION:

DATE OF BIRTH OF RESPONDENT: _____

TYPE OF IDENTIFICATION PRODUCED BY RESPONDENT FOR VERIFICATION: _____

SERVED BY: _____　　BADGE #: _____　　AGENCY: _____
(please PRINT name)

DATE: _____　　TIME: _____　　ADDRESS: _____

AFTER COMPLETING SERVICE, BUT **BEFORE** THE END OF YOUR SHIFT, FAX THIS FORM TO THE MIAMI-DADE POLICE DEPARTMENT (MDPD) COURT SERVICES BUREAU (CSB) AT (305)375-5517. AFTER FAXING, SEND HARD COPY TO THE MDPD-CSB. IF NO FAX IS AVAILABLE, CHECK HERE [ ] AND SEND IMMEDIATELY TO MDPD-CSB. ADDITIONALLY, THE MDPD's WARRANTSBUREAU DUTY OFFICER WILL BE NOTIFIED OF COMPLETED SERVICE AT (305)471-1700 AFTER NORMAL BUSINESS HOURS.

A4700

MDPD CIVIL PROCESS BUREAU
RESPONDENT'S DESCRIPTION SHEET — DOMESTIC VIOLENCE

Case Number:   2017-018397-FC-04      Petitioner's Name:   **Brandy Elizabeth Rauterson**

Respondent's Name:  Jose p Font
Nickname(s):      N\A

Home Address:          1416 N 8th ST
                       Dania Beach, FL  33004

County:
Name of Complex:
Home Phone:            Home: 954-927-5330
Best Time to Serve:                         AM/PM

Other Address:
County:
Name of Complex:
Other Phone:
Best Time to Serve:                         AM/PM

Name of Employer/Business    Font & Nelson LLC
Address                      2000 S Andrews AVE
                             STE 601
                             Ft Lauderdale, FL 33301
County
Name of Building
Respondent's Work Phone:
Days Off from Work
Best Time to Serve:                         AM/PM

RESPONDENT'S PHYSICAL DESCRIPTION
Sex      Male              Age
Race     White             DOB
Weight   160 Lbs.          Height     5 Ft. 8 In.
Hair     Brown             Eye Color  Brown

Scars/Tattoos/Mustache/Gold tooth/etc.:

Weapons      N\A                    Job Related Weapon:
Describe:

VEHICLE (Car/Truck) INFORMATION
Make:    N\A               Model:              Year:
Color                      Tag:

JAIL INFORMATION (Current)
In Jail?       No          Date Arrested:      Facility:
If known;  Jail #          Cell #

*** DO NOT COMPLETE IF CONFIDENTIAL ***
Phone Number for Petitioner: (Home)      Home:            (Work):
Alternate Contact Number:
Contact Person:                          Relation:

# EXHIBIT 2 to
# Response to Florida Bar
# Complaint No.: 2018-50, 179

05 13

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT,
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

Case No.. 2017-018397-FC-04

Brandy Elizabeth Raulerson
   Petitioner,

V.

Jose p Font
   Respondent

☒ DOMESTIC VIOLENCE DIVISION
☒ ORIGINAL ORDER
☐ EXTENSION

ISSUED:   July 31, 2017
EXPIRES:   August 15, 2017
OR UNTIL THE FINAL JUDGMENT OF
INJUNCTION FOR PROTECTION,
IF ENTERED, IS SERVED
ON RESPONDENT

## TEMPORARY INJUNCTION FOR PROTECTION AGAINST STALKING VIOLENCE

The Petition for Injunction for Protection Against Stalking Violence under section 784.0485, Florida Statutes, and other papers filed in this Court have been reviewed. The Court has jurisdiction of the parties and the subject matter under the laws of Florida. The term "Petitioner" as used in this injunction includes the person on whose behalf this injunction is entered.

It is intended that this protection order meet the requirements of 18 U.S.C. §2265 and therefore intended that it be accorded full faith and credit by the court of another state or Indian tribe and enforced as if it were the order of the enforcing state or of the Indian tribe.

### NOTICE OF HEARING

Because this Temporary Injunction for Protection Against Stalking Violence has been issued without notice to Respondent, Petitioner and Respondent are instructed that they are scheduled to appear and testify at a **fifteen minute** hearing regarding this matter on

**August 16, 2017**   at   **9:30 AM,**

when the Court will consider whether the Court should issue a Final Judgment of Injunction for Protection Against Stalking Violence, which shall remain in effect until a date certain, or until modified or dissolved by the Court, and whether other things should be ordered. The hearing will be before the Honorable **LUISE KRIEGER-MARTIN** in the **South Dade Justice Center located at 10710 SW 211 Street, Cutler Bay, FL. 33189,**   Court Room 2-6. If Petitioner and/or Respondent do not appear, this temporary Injunction may be continued in force, extended, or dismissed, and/or additional orders may be granted. Children are not permitted to testify unless a motion is filed pursuant to Fla.Fam.L.R.P.12.407, and an order allowing the testimony is granted prior to the hearing. **All witnesses and evidence, if any, must be presented at this time.**

NOTICE: Because this is a civil case, there is no requirement that these proceedings be transcribed at public expense. YOU ARE ADVISED THAT IN THIS COURT: Only Injunctions for Protection Against Domestic Violence Cases, filed pursuant to section 741.30 Florida Statutes, will be electronically recorded by the court. If your case is filed pursuant to chapter 784 (Repeat, Dating, or Sexual Violence), No recording is required to be made by the court. You may arrange in advance, at your own expense, for a court reporter to appear at the hearing, in all cases which have been recorded, or where a court reporter has been present, a transcript of the proceedings may be requested and prepared, at your own expense.

☐ **PERSONAL SERVICE**   ☐ **NO SERVICE**

TEMPORARY INJUNCTION FOR PROTECTION AGAINST STALKING VIOLENCE - Case No.: 2017-**REMARKS**
Page 1 of 5

A RECORD, WHICH INCLUDES A TRANSCRIPT, MAY BE REQUIRED TO SUPPORT AN APPEAL. THE PARTY SEEKING THE APPEAL IS RESPONSIBLE FOR HAVING THE TRANSCRIPT PREPARED BY A COURT REPORTER. THE TRANSCRIPT MUST BE FILED WITH THE REVIEWING COURT OR THE APPEAL MAY BE DENIED.

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing- or voice impaired, call 711.

### FINDINGS

The statements made under oath by Petitioner make it appear that section 784.0485, Florida Statutes, applies to the parties, that Petitioner is a victim of stalking by Respondent.

### TEMPORARY INJUNCTION AND TERMS

This injunction shall be effective until the hearing set above, or until Final Judgment of Injunction, if entered, is served on Respondent or otherwise extended by the Court. THIS INJUNCTION IS VALID AND ENFORCEABLE IN ALL COUNTIES OF THE STATE OF FLORIDA. The terms of this injunction may not be changed by either party alone or by both parties together. Only the Court may modify the terms of this injunction. Either party may ask the Court to change or end this injunction.

Willful violation of the terms of this injunction, such as: committing an act of stalking against Petitioner; going to or being within 500 feet of Petitioner's residence, place of employment, school, or other place prohibited in this injunction; knowingly and intentionally coming within 100 feet of Petitioner's motor vehicle, whether or not that vehicle is occupied; committing any other violation of this injunction though an intentional unlawful threat, word or act to do violence to Petitioner; telephoning contacting or communicating with Petitioner, unless indirect contact through a third party is specifically allowed by this injunction; defacing or destroying Petitioner's personal property, including Petitioner's motor vehicle; or refusing to surrender firearms or ammunition if ordered to so by the Court, constitutes a misdemeanor of the first degree punishable by up to one year in jail, as provided by sections 775.082 and 775.083, Florida Statutes.

Any party violating this injunction may be subject to civil or indirect criminal contempt proceedings, including the imposition of a fine or imprisonment, and also may be charged with a crime punishable by a fine, jail, or both, as provided by Florida Statutes.

ORDERED and ADJUDGED:

1.   Violence Prohibited.
     Respondent shall not commit, or cause any other person to commit, any acts of violence against

Petitioner, including assault, aggravated assault, battery, aggravated battery sexual assault, sexual battery, or stalking, aggravated stalking, kidnaping, or false imprisonment, or any criminal offense resulting in physical injury or death. Respondent shall not commit any other violation of the injunction through an intentional unlawful threat, word, or act to do violence to the Petitioner.

2.   **No Contact.**

_____ a. Unless otherwise provided herein, Respondent shall have no contact with Petitioner. Respondent shall not directly or indirectly contact Petitioner in person, by mail, e-mail, fax, telephone, through another person, or in any other manner. Further, Respondent shall not contact or have any third party contact anyone connected with Petitioner's employment or school to inquire about Petitioner or to send any messages to Petitioner. Unless otherwise provided herein.

**Respondent shall not go to, in, or within 500 feet of:**
Petitioner's current residence

<Confidential>

or any residence to which Petitioner may move:

Petitioner's current or any subsequent place of employment or place where Petitioner attends school

| Barnard Law Offices, L.P. | 9655 S Dixie HWY |
| | Miami, FL 33156 |

or the following other places (if requested by Petitioner) where Petitioner or Petitioner's minor children go often:

[Initial if applies; Write N/A if not applicable]

_____ b.  Respondent may not knowingly come within 100 feet of Petitioner's automobile at any time.

_____ c.  Other provisions regarding contact:

_____ d. **Exceptions for court-related contact.** When scheduled for court appearances, the parties may both appear in court at the same time, but the parties shall not speak to, gesture at or otherwise verbally or non-verbally communicate with or have any contact with each other unless expressly authorized to do so by the judge. Service of properly filed non-harassing papers, by counsel, by process server, or by mail, will not constitute a violation of this order. The parties must obtain approval from the court before scheduling or attending any deposition or mediation which will require attendance by both parties. Each party may, but is not required to, communicate with the other party's attorney, if applicable, but not in the other party's presence.

_____ e.  Petitioner and Respondent are employed by the same employer, work at the same physical location, or attend the same school. Accordingly, the following restrictions shall apply:

3. **Firearms.**
[Initial all that apply; write N/A if does not apply]

_____ a. Respondent shall not use or possess a firearm or ammunition.

_____ b. Respondent shall immediately surrender any firearms and ammunition in the Respondent's possession to the nearest police department to his/her home upon being served with the temporary injunction, and obtain a receipt of surrender. The receipt must be filed with the Clerk of Court within twenty four (24) hours and respondent must bring a copy to the final hearing.

_____ c. Other directives relating to firearm and ammunition: The Respondent shall bring a receipt of surrender to the final hearing.

4. **Mailing Address.** Respondent shall notify the Clerk of the Court of any change in his or her mailing address within ten (10) days of the change. All further papers (excluding the final injunction, if entered without Respondent's being present at the hearing, and pleadings requiring personal service) shall be served by mail to Respondent's last known address. Such service by mail shall be complete upon mailing, Rule 12.080, Fla. Fam. L. R. P., section 784.0485, Florida Statutes.

5. **Additional order(s) necessary to protect Petitioner from domestic violence:**

## OTHER SPECIAL PROVISIONS

1. ANY VIOLATION OF THIS INJUNCTION, WHETHER OR NOT AT THE INVITATION OF THE PETITIONER OR ANYONE ELSE, MAY SUBJECT THE RESPONDENT TO CRIMINAL PROSECUTION OR CONTEMPT OF COURT. THE PARTIES CANNOT AMEND THE INJUNCTION THEMSELVES EITHER VERBALLY, IN WRITING, OR BY INVITATION TO THE RESIDENCE OR SOME OTHER PLACE. MODIFICATIONS ARE ONLY VALID AND ENFORCEABLE AFTER HEARING AND WRITTEN COURT ORDER. EITHER PARTY MAY REQUEST THE COURT TO CHANGE OR END THIS INJUNCTION AT ANY TIME. SHOULD YOU DESIRE ANY CHANGES TO THIS INJUNCTION, PUT YOUR REQUEST IN WRITING AND FILE IT WITH THE DOMESTIC VIOLENCE CLERK'S OFFICE WHERE THE INJUNCTION WAS ISSUED. FOR FURTHER INFORMATION, CALL (305) 275-1155. A HEARING WILL BE SCHEDULED WITHIN FIVE (5) DAYS OF YOUR REQUEST.

2. THE COURT MAY GRANT A CONTINUANCE BEFORE OR DURING A HEARING ON THIS MATTER UPON A SHOWING OF GOOD CAUSE BY EITHER PARTY, WHICH INCLUDES A CONTINUANCE TO OBTAIN SERVICE OF PROCESS. ANY INJUNCTION SHALL BE EXTENDED, IF NECESSARY, TO REMAIN IN FULL FORCE AND EFFECT DURING ANY PERIOD OF CONTINUANCE.

3.  EACH PARTY IS DIRECTED TO IMMEDIATELY ADVISE THE CLERK OF THE COURT, DOMESTIC VIOLENCE DIVISION, IN WRITING, AT THE LOCATION WHERE THE CASE IS PENDING, OF ANY CHANGE OF ADDRESS. FAILURE TO COMPLY MAY JEOPARDIZE YOUR RIGHTS.

4.  IT IS A FEDERAL CRIMINAL FELONY OFFENSE TO CROSS STATE LINES OR ENTER INDIAN COUNTRY FOR THE PURPOSE OF ENGAGING IN CONDUCT THAT IS PROHIBITED IN THIS INJUNCTION.  18 U.S.C. §2262.  THE CRIMINAL PENALTY FOR VIOLATING THIS SECTION IS INCARCERATION OF UP TO LIFE IMPRISONMENT, DEPENDING ON THE NATURE OF THE VIOLATION.

5.  RESPONDENT, UPON SERVICE OF THIS INJUNCTION, SHALL BE DEEMED TO HAVE KNOWLEDGE OF AND TO BE BOUND BY ALL MATTERS OCCURRING AT THE FINAL HEARING AND ON THE FACE OF THIS INJUNCTION, REGARDLESS OF WHETHER RESPONDENT APPEARS AT THE HEARING.

6.  THIS TEMPORARY INJUNCTION MAY BE EXTENDED UNTIL SUCH TIME AS SERVICE OF THE FINAL INJUNCTION, IF ENTERED, IS MADE UPON RESPONDENT.

**DIRECTIONS TO LAW ENFORCEMENT OFFICERS IN ENFORCING THIS INJUNCTION**
*(Provisions in this injunction that do not include a line for the judge to either initial or write N/A are considered mandatory provisions and should be interpreted to be part of this injunction.)*

1.   The Sheriff of Miami-Dade County, or any other authorized law enforcement officer, is ordered to serve this temporary injunction upon Respondent as soon as possible after its issuance.

2.   **This injunction is valid in all counties of the State of Florida.** Violation of this injunction should be reported to the appropriate law enforcement agency. Law enforcement officers of the jurisdiction in which a violation of this injunction occurs shall enforce the provisions of this injunction and are authorized to arrest without a warrant pursuant to section 901.15, Florida Statutes, for any violation of its provisions which constitutes a criminal act under section 784.047, Florida Statutes.

3.   Should any Florida law enforcement officer having jurisdiction have probable cause to believe that Respondent has knowingly violated this injunction, the officer should arrest Respondent, confine him/her in the county jail without bail, and shall bring him/her before the initial Appearance Judge on the next regular court day so that Respondent can be dealt with according to law. The arresting agent shall notify the State Attorney's Office immediately after arrest. THIS INJUNCTION IS ENFORCEABLE IN ALL COUNTIES OF FLORIDA AND LAW ENFORCEMENT OFFICERS MAY EFFECT ARRESTS PURSUANT TO SECTION 901.15(6), FLORIDA STATUTES.

4.   THIS TEMPORARY INJUNCTION IS EXTENDED UNTIL SUCH TIME AS SERVICE OF THE FINAL INJUCNTION, IF ENTERED, IS MADE UPON RESPONDENT.

ORDERED on this **July 31, 2017**        at   3:4/5   AM / PM.

_____
Circuit Judge **LUISE KRIEGER-MARTIN**

STATE OF FLORIDA, COUNTY OF DADE
THIS IS TO CERTIFY THAT THE FOREGOING IS A
TRUE AND CORRECT COPY OF THE DOCUMENT
ON FILE OR OF PUBLIC RECORD IN THIS OFFICE.
WITNESS MY HAND AND OFFICIAL SEAL
JUL 3 1 2017
THIS            DAY OF
HARVEY RUVIN, CLERK OF CIRCUIT COURT
BY                                    D.C.

A4708

**NAME OF RESPONDENT: Jose p Font**

Physical description of Respondent:

| Date of birth | | Age | |
|---|---|---|---|
| Race | **White** | Sex | **Male** |
| Height | **5 Ft. 8 In.** | Weight | **160 Lbs.** |
| Hair Color | **Brown** | Eye Color | **Brown** |

Distinguishing marks or scars: N\A

Aliases (other names) Respondent uses or has used: N\A

Nickname(s): N\A.

Respondent's vehicle make, model, year, color and TAG
N\A

ATTACH PHOTO, IF AVAILABLE

**COPIES TO:** (Check those that apply)

Petitioner:

☐ by U. S. Mail

☒ by hand delivery

Respondent:

☒ forwarded to sheriff for service

☐ by U. S. Mail

☐ by hand delivery in open court

☐ by certified mail (may only be used when Respondent is present at the hearing and Respondent fails or refuses to acknowledge the receipt of a certified copy of this injunction.)

☐ Sheriff of Miami-Dade County

☐ State Attorney's Office

☐ Warrants Bureau

☐ Central Governmental Depository (if ordered)

☐ Department of Revenue

☐ Other: _____

Petitioner's-Attorney:   ☐ by U.S. Mail

☐ by hand delivery

Respondent's Attorney:  ☐ by U.S. Mail

☐ by hand delivery

I CERTIFY the foregoing is a true copy of the original as it appears on file in the office of the Clerk of the Circuit Court of Miami-Dade County, Florida, and that I have furnished copies of this order as indicated above.

CLERK OF THE CIRCUIT COURT

By: _____

Deputy Clerk

ID #: _____

As of: July 31, 2017

IN THE COUNTY COURT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA.

CIVIL COUNTY DIVISION

CASE NO.: 17-18397-FC-04

BRANDY E. RAULERSON

    Petitioner,

v.

JOSE FONT, ~~~~~~~~~~~~

    Defendant(s).

_____/

## PETITION FOR INJUNCTION FOR PROTECTION AGAINST STALKING

I, BRANDY E. RAULERSON, being sworn, certify that the following statements are true:

SECTION I. PETITIONER

1. Petitioner residence is CONFIDENTIAL: Her business address is:  c/o Barnard Law Offices,
L.P., 9655 South Dixie Hwy, Suite 200, Miami, Fl. 33156

2. Petitioner's attorney's name, address, and telephone number is: Andrew C. Barnard, Esquire,
Barnard Law Offices, L.P., 9655 South Dixie Hwy, Suite 200, Miami, Fl. 33156.

SECTION II. RESPONDENT

1. Respondent Jose Font resides at 1416 NW 8th Street, Dania Beach, Florida 33004-2327. He is
a lawyer. He is also the managing partner of a law firm which, upon information and belief, he
controls. The name of the law firm is Font & Nelson, LLC whose address is 200 South Andrews
Avenue, Suite 501, Fort Lauderdale, FL., 33301.

2. Respondent's last known place of employment: Font & Nelson, LLC, 200 South Andrews
Avenue, Suite 501, Fort Lauderdale, FL., 33301.
Employment address: 200 South Andrews Avenue, Suite 501, Fort Lauderdale, FL., 33301.
Working hours of Respondent: regular, at least from 9:00 a.m to 6:00 p.m..

3. Description of Respondent: Respondent Jose Font's physical description is:

A04711

Race: Latin; Sex: Male; Date of Birth: Unknown; Estimated Height:5', 8"; estimated Weight: 160 lbs. Eye Color: brown; Hair Color: Dark brown. Picture attached.
Vehicle: unknown - perhaps a late model BMW or a Maserati.

4. Other names Respondent goes by (aliases or nicknames): Jose Pete Font.

5. Respondent's attorney's name, address, and telephone number is: Unknown, probably himself

SECTION III. CASE HISTORY AND REASON FOR SEEKING PETITION

1. Has Petitioner ever received or tried to get an injunction for protection against stalking against Respondent in this or any other court? No. Not stalking, but has successfully obtained protection on subpoenae issued by Jose Font on cases where Brandy Raulerson has no contact or connection with.

2. Has Respondent ever received or tried to get an injunction for protection against stalking against Petitioner in this or any other court? No. However, Petitioner was successful in obtaining a protection order which quashed the last subpoena issued by Mr. Font on July 19, 2017. (See Exhibit 2, @ pg. 25 of the exhibits).

3. Describe any other court case that is either going on now or that happened in the past between Petitioner and Respondent (include case number, if known): None where these parties are parties in those lawsuits. However, Petitioner and Respondent are involved *vicariously* in litigation in several lawsuits involving their respective charges (cases assigned to Ms. Raulerson) or clients. Both are attorneys. However, this lawsuit is about harassment and stalking as defined in the statute.

4. Petitioner is a victim of stalking because Respondent has:

   a. Committed multiple acts of stalking;

   b. Previously threatened, harassed, stalked, cyberstalked, or abused the Petitioner causing her extreme mental anguish resulting in physical illness (hives, vomiting, lost sleep, loss of enjoyment of life, disparagment of reputation);

   c. Threatened to harm Petitioner and individuals closely associated with Petitioner; Jose Font.                    : Font have repeatedly harassed and threatened Petitioner and her co workers and her employer by forcing her to appear at court hearings having nothing to do with her, and then threatening her with criminal actions, going so far as to publish a false affidavit against her which he suborned from a prior client, Barbara Santos. A motion to strike that affidavit as a sham is pending (Exhibit 1). Mr. Font has been carrying out his threats against Ms. Raulerson, after making the verbal threats to her that he will cause her to lose her bar license and livelihood and reputation, by repeatedly publishing the Santos' affidavit in all cases

Petition for injunction against repeat violence and stalking violence page 2 of 11

involving Barnard Law Offices, L.P. as well as other cases where Barnard Law Offices L.P. has no involvement whatsoever. It is the epitome of cyber bullying. Mr. Font's actions in making such threats, publishing the defamatory affidavit all over where it is totally irrelevant to cast her in a bad light, and subpoenaing Ms. Raulerson on cases she had nothing to do with, and on cases where she is subpoenaed and not called to testify is harassment calculated to cause anxiety in Ms. Raulerson. His filings, comments, actions and publishing continue unabated, with malice and spite as his only motivation, stemming back to Ms. Raulerson's rejection of his crude sexual advances.

d.  Previous protection: There has been an order of protection issued by the Honorable Bronwyn Miller quashing a recent subpoena and ordering protection regarding that subpoena issued against Petitioner by Respondent's law firm under Fla. R. Civ. P. 1.280, similar to the reason for protection sought herein - it was harassment. (Exhibit 2, @ pg. 25 of the exhibits). The motion seeking such protection follows the order at ppgs 27-86, all part of Exhibit 2. Ms. Raulerson should never have been subpoenaed in that case as she had no knowledge thereof. This was recognized by the court so the judge issued an order quashing the subpoena and excusing Ms. Raulerson therefrom. (Motion and Order attached Exhibit 2, page 25-86 of exhibits). This was in the 11° Judicial Circuit, in and for Miami-Dade County, Florida, case no. 14-020826 CA 01 [Miller], *Angarita v. Southern Fidelity Property & Casualty Inc.* The motion for protection in Exhibit 2 is quite lengthy setting out some of the older subpoenae and without mention of the verbal harassment and threats detailed in this petition.

During the evidentiary hearing on June 28, 2017, in Case No. 15-022864 CA (01) (11) for a hearing in *Russo and Lolas v. Southern Fidelity Insurance Company*, Ms. Raulerson appeared due to yet another subpoena issued by Font and Nelson, LLC, (controlled by Jose Font) which subpoena was issued and signed by Jose Font and Alan Blose, his junior associate, on April 20, 2017. Judge Thomas Rebull excused Ms. Raulerson from further compliance with the harassing subpoena issued by Mr. Font when it was determined that her testimony was completely irrelevant to the issues before the court, and that she had no contact with the case at all. (Portion of transcript attached Exhibit 3, highlighted pg. 103:1-6 of transcript, pg. **111** of these exhibits).

No other protection orders have been entered that are known, but motions are pending.

5. Below is a description of the specific incidents of harassment, threats, stalking and cyberstalking within the last 6 months and a history of other stalking going back to January, 2016:

**Techniques used by Jose Font and his nominees to harass Brandy Raulerson, coupled with verbal threats in the courthouse and at depositions within the past 6 months, including subpoenae compelling Brandy Raulerson to appear and remain in Jose Font's presence, all of which qualify as stalking, cyberstalking and repeat violence. The subpoenae are attached as a 14 page exhibit 4 [at ppgs. 112-126 of the exhibits]:**

a.  CASE NO. 15-022864 CA (01) (11) for a hearing in *Russo and Lolas v. Southern Fidelity Insurance Company*, issued by Font and Neison, LLC, (controlled by Jose Font) which subpoena was issued and signed by Jose Font and Alan Blose, his junior associate, on April 20, 2017 and

Petition for injunction against repeat violence and stalking violence page 3 of 11

served upon Petitioner in Miami-Dade County, Fl.   A copy of the subpoena and notice was transmitted electronically to her Employer, Barnard Law Offices, L.P., which causes the issue to be cyber in nature, as well as regular stalking/harassment under cover of 'legal' action. Ms. Raulerson has no connection with the Russo case and has filed no pleadings therein, nor made any appearance therein. The subpoena was issued for the sole objective of harassing Ms. Raulerson and interfering with her employment, to subject her to shame and humiliation, and to cause her anxiety.  Ms. Raulerson cried many nights as a result of this harassment.

Mr. Font knew that his action would cause pain and the result was calculated by him. He was advised that Ms. Raulerson had nothing to do with the Russo case, and it was requested that Ms. Raulerson be released from the subpoena. Mr. Font refused, because the subpoena had the dual purpose of 'vexing' the Barnard Law Offices, L.P. by causing half its staff of lawyers to appear at a frivolous hearing. It wasn't until the judge discovered that Ms. Raulerson had no connection with the case when Mr. Font finally put her on the stand as a witness on June 28, 2017, that she was excused from subpoena in the case after the judge declared Ms. Raulerson's testimony and appearance irrelevant.

On June 27, 2017, in the morning at the downtown courthouse in courtroom 8-2, Ms. Raulerson requested Mr. Blose that she be excused from the subpoena that had been signed by Mr. Blose as she had no knowledge of the case. Mr. Blose said that only Mr. Font could grant such relief. When Mr. Font was asked, as soon as he arrived, he refused to answer. As the day wore on, Ms. Raulerson asked she be put on for testimony so she would not waste all day there. Mr. Font refused.  By the end of the day, Mr. Barnard complained that Mr. Font was simply wasting Ms. Raulerson's time (and Barnard Law Offices, L.P. money) by keeping her there. When queried by the judge, Mr. Font still refused to excuse her from the subpoena, said she would be put on first thing in the morning.  As Ms. Raulerson was leaving, Mr. Font commented to her that he was going to make her lose her license and intimated that he was going to have her put in jail, and that losing her license would be the least of her worries. This was witnessed by Andrew C. Barnard. The threat was completely unprovoked. Mr. Barnard replied to Mr. Font in an effort to reassure Ms. Raulerson, that "everything would turn out just fine." The next day, Mr. Font attempted to turn the colloquy into some type of threat against his patsy, Barbara Russo~ Santos

On June 28, 2017, Mr. Font finally put Ms. Raulerson on the stand.  It was again confirmed that she had no relevant information, and she was ultimately excused by the judge. (Exhibit 3 ,Tr. At pg. 103:1-11). Mr. Font attempted to imply that Ms. Raulerson had made some threat against Mrs. Santos (the perjurer) but such was not true. This is yet another technique of harassment.

The threats made by Mr. Font to a young lawyer such as Ms. Raulerson about losing one's bar license are quite disturbing especially since it involves manipulating a third party into perjuring herself, and is meant to harass the target, and instill fear and anxiety. Such activity cannot be condoned or protected. The threat by Mr. Font against Ms. Raulerson that her bar license would just be the start of trouble she would have as a result of her association with Barnard Law Offices, L.P. , is also downright scary, and meant to be. The motivation probably resulted from his hurt ego due to her rejection of his inappropriate sexual advances and crude comments in the previous year. Whatever the reason, the harassment and threats were followed by Mr. Font's actions in filing the defamatory affidavit in over a dozen cases. Ms. Raulerson's a

Petition for injunction against repeat violence and stalking violence page 4 of 11

victim of a malicious harassing 'slime'/defamatory attack carried out by Mr. Font. This is not protected by any privilege because harassment is not 'protected'. It is a crime. Ms. Raulerson is not associated with the other cases in which the affidavit was filed. Mr. Font's reasons for filing the affidavit was simply motivated by pure malice to hurt Ms. Raulerson and to scare her. Well, he succeeded in that.

    b. CASE NO. 15-022864 CA (01) (11) for hearing in Russo and Lolas v. Southern Fidelity Insurance Company, issued by Jose Font and Alan Blose, his junior associate, on June 14, 2017. A copy of the subpoena and notice was transmitted electronically to her Employer, Barnard Law Offices, L.P., which causes the issue to be cyber in nature, as well as just regular harassment under cover of 'legal' action. As noted above, Ms. Raulerson had no participation in this case.

    c. CASE NO. 15-022864 CA (01) (11) again for a hearing in Russo and Lolas v. Southern Fidelity Insurance Company, issued by Jose Font and Alan Blose, his junior associate, on June 22, 2017. A copy of the subpoena and notice was transmitted electronically to her Employer, Barnard Law Offices, L.P., which causes the issue to be cyber in nature, as well as just regular harassment under cover of 'legal' action. As noted above, Ms. Raulerson had no participation in that case. Mr. Font knew this, and was advised of this, and was requested that Ms. Raulerson be released from the subpoena. It wasn't until the judge discovered that Ms. Raulerson had no connection with the case that on June 28, 2017 she was excused from subpoenae in the case after the judge declared Ms. Raulerson's testimony and appearance irrelevant. Due to the subpoena, Ms. Raulerson had to attend the hearing the prior day doing absolutely nothing. Ms. Raulerson was eventually excused from this subpoena, but was forced to attend because Mr. Font lied about her being involved with the case. Mr. Font has no trouble lying to justify all his actions, as is common with narcissists. Judge Rebull's comment on her attendance was: "No, I don't need to hear from Ms. Raulerson." which occurred on June 28, 2017, after Mr. Font compelled her to appear, and testify and again confirm that she had nothing to do with the case, and had no knowledge of the wild allegations made by Mr. Font against her employer, Barnard Law Offices, L.P.

    d. CASE NO. 15-022872 CA (01)(09) for hearing in Santos v. Southern Fidelity Property and Casualty, Inc., issued by Jose Font, and Andrea Ramos, his junior associate in Font and Nelson, LLC controlled by Jose Font, on June 21, 2017. A copy of the subpoena and notice was transmitted electronically to her Employer, Barnard Law Offices, L.P., which causes the issue to be cyber in nature, as well as just regular harassment under cover of 'legal' action. Although called to appear, and she did appear, Mr. Font did not call her as a witness. It was issued solely to waste Ms. Raulerson's time. Instead he called Andrew Barnard to the stand and, according to Judge Echarte, wasted two days of time as he did not prove any aspect of his defamatory claim against Barnard Law Offices, LP., Andrew Barnard, Brandy Raulerson, or Maxwell Barnard.

    e. CASE NO. 15-022872 CA (01)(09) for hearing in Santos v. Southern Fidelity Property and Casualty, Inc., issued by Jose Font, and Andrea Ramos, his junior associate in Font and Nelson, LLC controlled by Jose Font, on July 10, 2017. A copy of the subpoena and notice was transmitted electronically to her Employer, Barnard Law Offices, L.P., which causes the issue to be cyber in nature, as well as just regular harassment under cover of 'legal' action. Although called to appear, and she will appear in compliance with the subpoena, Mr. Font will

not call her as a witness, because Mr. Font's allegations against her are simply lies.

f. CASE NO. 14-020826 CA (01)(04) for hearing in Angarita v. Southern Fidelity Property and Casualty, Inc., issued by Jose Font, and Andrea Ramos, his junior associate in Font and Nelson, LLC controlled by Jose Font, on July 10, 2017. A copy of the subpoena and notice was transmitted electronically to her employer, Barnard Law Offices, L.P., which causes the issue to be cyber in nature, as well as just regular harassment under cover of 'legal' action. As in the Russo case above, Ms Raulerson has no connection with the Angarita case and has filed no pleadings therein, nor made any appearance therein. The subpoena was issued for the sole objective of harassing Ms. Raulerson and interfering with her employment, to vex her and to waste her time. Mr. Font knew this, and was advised of this, and was requested that Ms. Raulerson be released from the subpoena. Mr. Font refused. Ms. Raulerson filed a motion for protection and was excused from the subpoena by a court order dated July 19, 2017.

g. Cyberstalking: June 2, 2017, Mr. Font was instrumental in obtaining and having a former client file, by email, a 9 page affidavit accusing Ms. Raulerson of suborning perjury, and accusing Barnard Law Offices, L.P. of staging insurance claims and fee splitting with non-lawyers. This was served at Ms. Raulerson's employment on June 2, 2017 via email through a nominee of Mr. Jose Font, Gigi Cabonell. The affidavit was culled directly from prior false and unsupported defamatory allegations made by Jose Font, and have absolutely no basis in fact. Mrs. Santos repudiated her claims of fee splitting against Barnard Law Offices, L.P. and staging claims in open court on June 28, 2017 in the Russo v. Southern Fidelity case mentioned above.

The invective of Mr. Font against Brandy Raulerson and her employer has its source from as early as January 22, 2016 (Ms. Raulerson's first encounter with Jose Font). It commenced with inappropriate sexual comments and conduct by Mr. Font that was embarrassing to Ms. Raulerson, and which Ms. Raulerson complained about. Mr. Font's invective has been 'brewing' and escalating since then to an alarming level, consistent with behavior exhibited by narcissistic psychopaths who cannot stand to lose 'control'. From a big picture, Mr. Font's conduct relates to frustrated power and control over Brandy Raulerson, cases being handled by Barnard Law Offices, L.P., and his own wounded narcissistic ego. Mr. Font's invective has risen even more, and he has become more unhinged, since Barnard Law Offices L.P. obtained a money judgment against him personally for $8,332.50 for discovery abuses recently on May 8, 2017 (Exhibit 5 at ppgs 127-131 of the exhibits).

Inappropriate sexual comments and conduct commenced by Jose Font against Brandy Raulerson on January 22, 2016 at an 'Examination under oath' conducted by Jose Font at 21500 Biscayne Blvd, Suite 501, Aventura, Fl. where Mr. Font expressed a salacious interest in Ms. Raulerson and then crudely commented to Joseph Loochkartt (another associte then with Barnard Law Offices, L.P.) within her hearing, as to whether Mr. Loochkartt was 'banging' and 'f**king' Ms. Raulerson, with the obvious intent or objective that Mr. Font wanted to 'bang' and 'f**k Ms. Raulerson. Ms. Raulerson was very upset with the comment and complained to her employer, Barnard Law Offices, L.P., and Andrew C. Barnard. Andrew Barnard contacted Mr. Font and expressed his concern to Mr. Font about such abuse from an attorney against a young associate. Mr. Font told Mr. Barnard to 'f**k off'.

Mr. Barnard informed Ms. Raulerson that she would thereafter be accompanied by another attorney on any issue related to Mr. Font and Southern Fidelity to prevent repeated crude

Petition for injunction against repeat violence and stalking violence page 6 of 11

comments. However, Mr. Font expanded his invective against both Ms. Raulerson and Mr. Barnard and Barnard Law Offices LP in a campaign of harassment using the legal system ostensibly as a tool to harass, and as a shield to forestall a defamation action under the cover of litigation privilege. Without any support, Mr. Font accused Barnard Law Offices, L.P. of staging claims, which is a crime. However, he filed no criminal complaint. Moreover he filed no Bar complaint as required by the rules of professional ethics. He knows that the allegation is simply a fraud by him, to get back at Ms. Raulerson for complaining to her employer about Mr. Font's inappropriate conduct. Also, he detests Barnard Law Offices, L.P. which is another target of his harassment. He regularly subpoenas Andrew Barnard, but protection is typically afforded. It's all harassment, especially in cases where Barnard Law Offices, L.P., has no involvement. Mr. Font thinks it's "funny" having repeatedly told Mr. Barnard that he enjoys watching Andrew Barnard, Sr. run around wasting his time.

R. Regulating Fla. Bar 4-3.1 proscribes frivolous legal actions, which include frivolous discovery, while 4-3.4(d) also proscribes frivolous discovery requests. Subpoenae issued to harass witnesses fall squarely into these proscriptions, especially when repeated again and again with the stated intention that the attorney issuing the subpoenae wants the target of the subpoenae to suffer anxiety and fear and to waste time in the litigation process, and suffer being in Mr. Font's obnoxious presence where Mr. Font makes inappropriate threats and accusations, and in the case of Ms. Raulerson, inappropriate suggestions such as "you can call me on my cell phone at night to discuss this case". The innuendo of unwanted congress is as blatant as is the 'delivery' of the suggestion. Bravely, Ms. Raulerson attempts to ignore such suggestive remarks from a very unsavory fellow, Mr. Font.

In almost each and every meeting between Mr. Font and Ms. Raulerson, Mr. Font makes inappropriate remarks and suggestive gestures calculated to harass and embarrass Ms. Raulerson with the specific objective of getting her to engage in unwanted relations, while increasing her anxiety and making her afraid. These tactics of intimidation mirror the same tactics employed by narcissistic psychopaths in their quest for power and control over their targets. Ms. Raulerson is afraid. Ms. Raulerson is a target of Mr. Font.

Mr. Font suborned perjury from a former client (Barbara Santos) of Barnard Law Offices, L.P, to defame Ms. Raulerson. The former client is presently being investigated for both perjury and insurance fraud. In an affidavit culled directly from a motion drafted by Jose Font, both Jose Font and his 'patsy/nominee', Barbara Santos, have accused Ms. Raulerson of suborning perjury, and has accused Barnard Law Offices, L.P. of 'staging' insurance claims, none of which is true. All of these actions are manifestations of Mr. Jose Font's unquenchable desire to dominate and control persons who do not agree with him. As it relates to Ms. Raulerson, Barnard Law Offices, L.P. and Ms. Raulerson's associates, Mr. Font has done the above described actions and other actions in bad faith. Bad faith is any action taken by a lawyer which would not be taken by a reasonably prudent lawyer within the confines of the Rules Regulating the Florida Bar under like circumstances.[1] Under the law, Mr. Font has the burden of proving good faith.[2] Under such

---

[1] R. Regulating Fla. Bar 4-3.2 states: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." The Comment in R. Regulating Fla. Bar 4-3.2 States: "Dilatory practices bring the administration of justice into disrepute. Although there

circumstance as these shown herein, a presumption of bad faith has been created and demonstrated. Ms Raulerson charges Mr. Jose Font with stalking and aggravated stalking and cyber stalking  and seeks a civil injunction against him to cause the threats to abate and the anxiety and fear to abate, intentionally and maliciously inflicted by Jose Font, Mr. Font's actions are obviously 'stalking' and harassment us 'violence' within the terms and definitions of the statute.  As to all these subpoenae issued against Ms. Raulerson, and her associations, it must be understood that even though a lawyer has a right to 'issue subpoenae, he does not have a right to abuse the subpoena power, as shown in *Moakley v. Smallwood*, 826 So. 2d 221 (Fla. 2002).  Nor does he have a right to use intimidation or threats against a lawyer for any reason to mention only a few items of his outrageous conduct:

### Other Harassment, cyberstalking, and stalking against Ms. Raulerson's associations:

a.  Mr. Font also and frequently abuses the subpoena power by subpoenaing Petitioner and individuals most closely associated with Petitioner, *e.g.* her employer Barnard Law Offices, L.P.,  to appear at court hearings or depositions where there is no reason for such appearance, which typically provokes a motion for protection, which would otherwise provoke an appearance from her co-workers in compliance with the subpoenae.  If a motion for protection can be issued on such short notice with a notice of hearing, typically the day before the protection motion hearing Mr. Font withdraws the subpoena.  However, he invariably makes it clear to the target of the subpoenae that he has subpoenaed the witness regardless of the witnesses' knowledge and will continue to do so, notwithstanding that he knows that it is a waste of time. He did this to Mr. Barnard in March of 2017, where he arrogantly testified that he would subpoena Mr. Barnard again and again. There is a pending sanctions motion in that otherwise completely unrelated case.

b.  Mr. Font operates in this fashion to intimidate his opposition or those he imagines have 'slighted him' or challenged him in any fashion, consistent with the reaction of a narcissist suffering a wounded ego.  This is harassment which is an insidious form of cyber bullying.

c.  For example, when he is faced with a disagreement by a judge as to his view, he defies the court and then files a frivolous motion to disqualify.  He has done this twice with the Honorable Samantha Ruiz-Cohen, and recently with the Honorable Rosa Rodriguez.  When the

_____

will be occasions when a lawyer may properly seek a postponement for personal reasons, it is not proper for a lawyer to routinely fail to expedite litigation solely for the convenience of the advocates. Nor will a failure to expedite be reasonable if done for the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose. It is not a justification that similar conduct is often tolerated by the bench and bar. *The question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay.* Realizing financial or other benefit from otherwise improper delay in litigation is not a legitimate interest of the client." (Emphasis added).

[2] [B]urden was on counsel to show good faith, not on moving parties to show bad faith or absence of good faith, *Andzulis v. Montgomery Road Acquisitions, Inc.*, 831 So. 2d 237 (Fla. 5ᵗʰ DCA 2002), *rehearing denied.*

Petition for injunction against repeat violence and stalking violence page 8 of 11

motion to disqualify is denied as legally insufficient, he appeals and files a petition for writ of prohibition, the latest petition for writ of prohibition being denied on July 26, 2017 (attached - Southern Fidelity v. Polanco, Case No. 3D17-1266. Exhibit 6, pg. 132). The point of these examples is to illustrate that Mr. Font's mental state is such that he will continue defying the court as if the rules do not apply to him, and will persist in a campaign of harassment, by any means possible, typically claiming some type of 'legal' justification.

d. Mr. Font acts in such a fashion to intentionally intimidate and to waste Ms. Raider's *Raulerson's* time and the personnel at Barnard Law Offices, L.P.'s time and, in this case, to 'vex' Petitioner and Petitioner's employer Barnard Law Offices, L.P., in an effort to have Petitioner fired, obviously for 'revenge', and to make the case as expensive as possible for the plaintiff. As part of this scheme and continuous plan of harassment adopted by Jose Font (utilizing his law firm), other attached subpoenae have been issued against Andrew C. Barnard, or Maxwell Barnard, for no rational reason.

e. Mr. Font's misuse of the subpoena power commenced in 2016, which although not actionable in this case, shows a continuous pattern and practice utilized by Mr. Font to harass and intimidate associations of Ms. Raulerson as follows[3]:

i. CASE NO. 15-008797-CC-26 (03), Liberty Water Mold Restoration Corp v. Southern Fidelity Insurance Company issued by Jose Font on February 24, 2016; and

ii. CASE NO. 15-007055 SP 26 (03) Liberty Water Mold Restoration Corp v. Southern Fidelity Insurance Company issued by Jose Font on February 24, 3016; and

iii. CASE NO. 15-008143 CC 26 (04) Liberty Water Mold Restoration Corp v. Southern Fidelity Insurance Company issued by Jose Font on February 29, 3016. and

iv. CASE NO. 2015 015169 CA 01 (34), Roxana Sanchez v. Southern Fidelity Property and Casualty, Inc. Issued by Jose Font on March 24, 2016; and

v. CASE NO. 2016-001320-SP-23 (06), Quality Mold Testing v. Southern Fidelity Insurance Company. issued by Jose Font on February 29, 2016; and

vi. CASE NO. 2016-001351 SP 23 (02) Quality Mold Testing v. Southern Fidelity Insurance Company, issued by Jose Font on February 24, 2016; and

vii. CASE NO. 2015 022864 CA 01 (13), Russo and Lolas v. Southern Fidelity Insurance Company, issued by Jose Font on February 26, 2016; and

viii. CASE NO. 2016-000002 CA-01 (32), Vaughn v. Southern Fidelity Insurance Company, issued by Jose Font on February 24, 2016

f. Mr. Font has expanded his harassment to include a co-worker: Maxwell Barnard:.

i. CASE NO. 15-022864 CA (01) (11) for deposition in Russo and Lolas v. Southern Fidelity Insurance Company. issued by Alan Blose, a junior associate of Mr. Jose Font, on April 14, 2017.

Mr. Font doesn't just make threats, he publishes his outlandish allegations as if truths, hiding behind 'judicial privilege'. Upon specific query as to whether he would waive judicial privilege, Mr. Font refused to answer. However, this case is not about judicial privilege. This

_____

[3] The court must keep in mind that Mr. Font's actions are becoming more frequent, alarming and wild, with egregious conduct manifesting itself with his filing of motions typically exceeding 500 pages in length. In the Russo case for example, one motion he filed exceeded 1,200 pages.

Petition for injunction against repeat violence and stalking violence page 9 of 11

case is about harassment, stalking and cyberstalking calculated to cause fear in its victims. In this case, Ms. Raulerson's discomfort has evolved into a palpable fear after Mr. Font told her he was having her watched by means of a remote drones. Adding that threat to his recent threat that he is seeking to have her imprisoned and to lose her bar license, Ms. Raulerson's discomfort has risen from high anxiety to revulsion against Mr. Font to the point where she has applied for and obtained a concealed weapons license.

**Additional pages of exhibits are attached to evidence these facts.**

6. Additional Information

___x___ Respondent owns, has, and/or is known to have guns or other weapons.
Describe weapon(s) and where they may be located, if known: the details are unknown, but he has casually mentioned his fondness of guns and ownership of the same at various hearings or depositions.

SECTION IV. INJUNCTION (This section must becompleted)

1. Petitioner asks the Court to enter a TEMPORARY INJUNCTION for protection against stalking that will be in place from now until the scheduled hearing in this matter, which will immediately restrain Respondent from committing any acts of stalking, and which will provide any terms the Court deems necessary for the protection of a victim of stalking, including any injunctions or directives to law enforcement agencies.

2. Petitioner asks the Court to enter, after a hearing has been held on this petition, a FINAL JUDGMENT for protection against stalking prohibiting Respondent from committing any acts of stalking against Petitioner and:

a. prohibiting Respondent from going to or within 500 feet of any place Petitioner lives, or to any specified place regularly frequented by Petitioner and any named family members or individuals closely associated with Petitioner:

Individual co-workers closely associated with Petitioner are: Maxwell Barnard, Erik Barnard, Marlene Sato, Keller Fischer, Andrew C. Barnard, Sr., any member of the Barnard family, or any associates or employees of Barnard Law Offices, L.P.

b. prohibiting Respondent from going to or within 500 feet of Petitioner's place of employment; the address of Petitioner's place(s) of employment is:
Barnard Law Offices, L.P., 9655 South Dixie Highway, Suite 200, Miami, FL. 33156

c. prohibiting Respondent from contacting Petitioner by telephone, mail, by e-mail, in writing, through another person, or in any other manner;

d. ordering Respondent that he or she shall not have in his or her care, custody, possession, or control any firearm or ammunition;

e. prohibiting Respondent from knowingly and intentionally going to or within 100 feet of Petitioner's motor vehicle, whether or not that vehicle is occupied;

3. Petitioner asks the Court to enter any other terms it deems necessary to protect Petitioner from stalking by Respondent. Petitioner specifically requests that Respondent or any of his

Petition for injunction against repeat violence and stalking violence page 10 of 11

associates of his law firm Pont & Nelson, LLC, over whom he has control be enjoined from issuing any more subpoenae against Petitioner or her working associates or employer to appear at any hearing or deposition without first obtaining leave of this court for a specific modification of the injunction to show good cause as to the issuance of such a subpoena.


I UNDERSTAND THAT BY FILING THIS PETITION, I AM ASKING THE COURT TO HOLD A HEARING ON THIS PETITION, THAT BOTH THE RESPONDENT AND I WILL BE NOTIFIED OF THE HEARING, AND THAT I MUST APPEAR AT THE HEARING. I UNDERSTAND THAT IF EITHER THE RESPONDENT OR I FAIL TO APPEAR AT THE FINAL HEARING, WE WILL BE BOUND BY THE TERMS OF ANY INJUNCTION OR ORDER ISSUED AT THAT HEARING.

I HAVE READ EVERY STATEMENT MADE IN THIS PETITION AND EACH STATEMENT IS TRUE AND CORRECT. I UNDERSTAND THAT THE STATEMENTS MADE IN THIS PETITION ARE BEING MADE UNDER PENALTY OF PERJURY, PUNISHABLE AS PROVIDED IN SECTION 837.02, FLORIDA STATUTES.

Dated: 7/31/17

Signature of Petitioner: _Brandy Efal_

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

Sworn to or affirmed and signed before me on by _BRANDY ABUCERSON_, on 7/31/17

NOTARY PUBLIC or DEPUTY CLERK
{Print, type, or stamp commissioned name of notary or clerk.}

☑ Personally known
☐ Produced identification
☐ Type of identification produced

_Genesis Navarrete_

GENESIS NAVARRETE
MY COMMISSION # FF 982449
EXPIRES: September 29, 2019
Bonded Thru Budget Notary Services

Petition for injunction against repeat violence and stalking violence page 11 of 11

A04721

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY, FLORIDA

**Brandy Elizabeth Raulerson**
    Petitioner,

        V.

**Jose p Font**
    Respondent,

&#9744;   DOMESTIC VIOLENCE DIVISION

Case No.: **2017-018387-FC-04**

**PETITIONER'S MOTION FOR HEARING
ON PETITION FOR INJUNCTION FOR
PROTECTION**

---

**I, Brandy Elizabeth Raulerson,** the Petitioner in the above reference case, hereby respectfully request a hearing on my Petition for Injunction for Protection Against Domestic/Repeat/Dating/Sexual Violence be set on the soonest available date. I understand that a hearing will take place after the Respondent receives notice and a copy of the Petition for Temporary Injunction I have filed.

**COPIES TO:  (Check those that apply)**

Petitioner:  ☐  by  U. S. Mail
             ☒  by hand delivery

Respondent:  ☒  forwarded to sheriff for service
             ☐  by hand delivery in open court (Respondent must acknowledge receipt
                in writing on the face of the original order- see below.)
             ☐  by certified mail (may only be used when Respondent is present at the
                hearing and Respondent fails or refuses to acknowledge the receipt of a
                certified copy of this injunction.)

☐  Sheriff of Miami-Dade County
☐  State Attorney's Office
☐  Warrants Bureau
☐  Central Governmental Depository (If ordered)
☐  Department of Revenue
☐  Other: _____

Petitioner's Attorney:   ☐   by U.S. Mail
                         ☐   by hand delivery
Respondent's Attorney:   ☐   by U.S. Mail
                         ☐   by hand delivery

I CERTIFY the foregoing is a true copy of the original as it appears on file in the office of the Clerk of the Circuit Court of Miami-Dade County, Florida, and that I have furnished copies of this order as indicated above.

CLERK OF THE CIRCUIT COURT

By: _____
Deputy Clerk

ID # _____

As of:  July 31, 2017

# EXHIBIT 3 to

# Response to Florida Bar

# Complaint No.: 2018-50, 179

Filing # 60948055 E-Filed 08/25/2017 06:38:36 PM

IN THE COUNTY COURT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA.

COUNTY CIVIL DIVISION

CASE NO.: 2017-018397 FC (04)

BRANDY RAULERSON

     Plaintiff.

v.

JOSE P. FONT

     Defendant(s).

**PETITION BY AFFIDAVIT FOR ORDER TO SHOW CAUSE FOR A VIOLATION OF TEMPORARY INJUNCTION FOR PROTECTION AGAINST STALKING**

We, Andrew Barnard, and Brandy Raulerson, being sworn, certify that we have actual knowledge as indicated below of the following facts as set forth and the following statements are true:

1. The Court previously issued a temporary injunction for protection against stalking in this case on July 31, 2017, and extended it on August 16, 2017. The extension of the temporary injunction was served upon Respondent in open court on August 16, 2017. Paragraph 2(a) provides:

    **a. Unless otherwise provided herein, Respondent shall have no contact with Petitioner.**

Paragraph 2(d) contains the following express prohibition:

    **Service of properly filed <u>non-harassing papers,</u> by counsel, by process server, or by mail, will not constitute a violation of this order.**

Thus, harassing subpoenae *duces tecum* seeking the entire financial history of Petitioner and Petitioner's employer is harassment and a violation of the injunction. Further, service of similar subpoenae on her employer and co-workers is an indirect communication to Brandy Raulerson to

'control' her and cause anxiety in her regarding her employment. It is harassment.

2.   On August 18, 2017, at Barnard Law Offices, L.P., at 9655 South Dixie Highway, Suite 200, Miami, FL. 33156, the following events took place for which both Andrew Barnard and Brandy Raulerson have actual knowledge:

Mr. Font, using his nominee employee Bryan Fischer, caused to be delivered to Brandy Raulerson via a process server a *harassing* subpoena *Duces Tecum* on August 18, 2017, requesting all of Ms. Raulerson's (and her family's) personal tax information over the last three years, as well as financial information from companies that Ms. Raulerson has no control over. Mr. Font in his own name also served Andrew Barnard, Barnard Law Offices, L.P., and Maxwell Barnard with similar subpoenae abusively seeking the same onerous private financial information.

None of the financial information is pertinent to any issue in the *Santos* case [which was dismissed with prejudice]. The *duces tecum* portions of the subpoenae are abusive on their faces, calculated to harass anyone who is the target of such a subpoena. (attached). Mr. Font. nor Mr. Fischer cannot give any coherent explanation as to why Ms. Raulerson's financial information over the last three years is pertinent to anything, and not harassment. Similarly, they cannot explain how Mr. Barnard's personal financial information is relevant, nor describe any justification or right to obtain such information. Bryan Fischer - whom Mr. Font used as a nominee to 'sign off' on Brandy Raulerson's subpoenae, merely shows an intent by Mr. Font to circumvent the injunction. Mr. Font knew the subpoenae were intrusive and abusive. The use of Mr. Fischer as a nominee to be the 'issuer' evidences Mr. Font's intent to disguise his

NO.: 2017-018397 FC (04), Petition for a rule to show cause - contempt, Page 2

A4726

contemptuous conduct of violating the anti stalking harassment portion of the injunction. Ms. Raulerson filed a motion for protection against the subpoena through her employer, as did the Barnards collectively. (Attached)

Before a hearing could be obtained on the motion for protection, Judge Echarte dismissed the case with prejudice on August 23, 2017 (Attached). The claim by Mr. Font against Brandy Raulerson and her employer was obviously meritless. The subpoenae were intended to be harassing. Mr. Font wilfully violated the restraining order.

3. Thus, Respondent has willfully violated the injunction by demanding all of Petitioner's financial information over the last three years as well as the financial information when such information is not relevant to any issue in the case. It is a mere fishing expedition, burdensome to marshal up such information, and maliciously intended to harass and cause anxiety in Ms. Raulerson and Barnard. As noted above, the subpoenae, the motion for protection, and the final judgment of dismissal with prejudice is attached. Mr. Font is no longer able to demand any financial information from Brandy Raulerson and Barnard in that case. However, it does not seem to deter him from this harassing activity.

4. Also, upon personal knowledge of Andrew Barnard (but knot Brandy Raulerson) and despite the restraining order which Mr. Font voluntarily agreed to extend on August 16, 2017 to a final hearing scheduled on October 2, 2017, Mr. Font also violated the order by approaching Andrew Barnard, Sr.. on August 21, 2017, at Diana's Café, 99 NW 1ˢᵗ Street, Miami, Fl. At approximately 8:00 a.m.. Mr. Font has made it known to Brandy Raulerson that he intends to

cause trouble in her employment by also harassing her employer and co-workers. Mr. Font did so

by touching Mr. Barnard on his sleeve and delivering an affidavit to Mr. Barnard, and asking

(communicating) to Mr. Barnard if Mr. Barnard had received the affidavit (which Mr. Font had

previously sent by email). Mr. Barnard told Mr. Font not to speak to him, and to move away

because he is a stalker and is in violation of a restraining order as the purpose of the affidavit was

simply to cause trouble with Brandy Raulerson's employment. There was no reason for Mr. Font

to approach or confront Mr. Barnard in a restaurant for any reason, especially in light of the

restraining order. Mr. Font was not invited to do so by Mr. Barnard. Delivery of an irrelevant

affidavit is not justification, especially since Mr. Font knew that it had already been sent by

email. Mr. Font simply attempted to harass and irritate Mr. Barnard in an effort to 'get back' at

Brandy Raulerson.


5. Additionally, even though the Santos case was dismissed with prejudice on August 23, 2017,

Mr. Font cause to be filed in the case of Polanco v. Southern Fidelity the 'Santos Affidavit'

which slanders Ms. Raulerson. The affidavit has absolutely nothing to do with the Polanco case,

and was published with wilful, deliberate, malicious intent as part of Mr. Font's campaign of

harassment. Adding insult to injury, Mr. Font is the author of the Santos' affidavit, which casts

Brandy Raulerson in a bad light (if taken as true). Mr. Font is intentionally trying to damage

Brandy Raulerson's reputation. This is an indirect violation of the court order aimed at causing

Brandy Raulerson anxiety, humiliation, pain and damage to her reputation. The fact that Mr.

Font, who has already been convicted of a crime involving dishonesty, is the purveyor of this

madness is quite troubling. He should not be allowed to get away with it.


NO.: 2017-018397 FC (04), Petition for a rule to show cause – contempt, Page 4

6. Respondent acted to impair, interfere with, delay, hinder, lessen the authority of, dignity of, and embarrass the cause of justice in a manner contemptuous of this court

I understand that by filing this affidavit, I am asking the court to hold a hearing, that both Respondent and I will be notifed of the hearing, and that I must appear at the hearing. In addition to my own testimony, I understand that I can bring other proof of the violation such as, for example, people who say Respondent violate the order, picture, medical records, police reports, or anything that might help show the judge how Respondent violated the temporary injunction for Protection against stalking.

I have read every statement mad ein this affidavit and each staetment is true and correct. I understand that the staements made in this affidavit are being made under penalty of perjury, punishable as provided in ection 837.02, Florida Statutes and that the punishment for knowingly making a false statement includes fines and/or imprisonment.

Dated: 5/25/20 17        _____
                                Signature of Petitioner

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

Sworn to or affirmed and signed before me on August 25, 2017.

_____
Notary Public

FRANCES QUESADA IBARRA
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF150978
Expires 8/14/2018

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent by email via the efiling portal or directly to the designees of record, and the following others, if any, on the following date: Jose Font, Alan Blose, jfont@fontnelson.com; ablose@fontnelson.com;

NO.: 2017-022872 FC (04), Petition for a rule to show cause - contempt, Page 5

A4729

pleadings@fontnelson.com

Respectfully Submitted,
Barnard Law Offices, L.P.
9655 So. Dixie Highway, Suite 200
Miami, FL. 33156
305-665-0000/ fax 305-669-9666
Email: abarnard@barnardlawlp.com

Andrew C. Barnard

By: _____
Andrew C. Barnard, Fl. B.No. 281697

A4730

8/18/17  5:30 P

TR #1588

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2015-022872 CA 01

BARBARA & HECTOR SANTOS,

     Plaintiff,

vs.

SOUTHERN FIDELITY PROPERTY
& CASUALTY, INC.,

     Defendant.

_____/

## SUBPOENA DUCES TECUM FOR EVIDENTIARY HEARING ON AUGUST 24, 2017 AT 10:15 AM

To:    **Brandy Rauterson, Esq.**
       Barnard Law Offices, L.P.
       9655 South Dixie Highway, Suite 200
       Miami, FL 33156

**YOU ARE HEREBY COMMANDED** to appear before the Honorable Pedro P. Echarte at the Miami-Dade County Courthouse, 73 West Flagler Street, Miami, FL, 33130, Room DCC 511, on August 24, 2017 at 10:15 A.M. to testify in the above-styled cause and to have with you at that time the following:

**Definitions and Instructions:** Unless specifically indicated otherwise, the scope is limited to a period of 3 years from the date of the subpoena, and "you" or "your," includes any person or entity that you have joint, shared or aligned financial and/or business interests with in the submission of homeowner's insurance claims, or any person or entity that you utilize in the operations associated with the submission of an insurance claim.

    1.  Any and all invoices and estimates from Omni Expert Consulting ("OCE"), as well as any other materials, documents or items which evidence: monies paid to you, or received from, OCE; financial and ownership interests of any person or entity affiliated with OCE; all direct and/or indirect benefactors of OCE; any direct and/or indirect financial benefit received by any person that you have a familial and/or business affiliation with, including, payments paid to the business/entity associated with said person; the managers and operators of OCE; any retainer agreements or contracts

A4731

between OCE and an insured who is pursuing a homeowner's insurance claim on your behalf; any closing statements issued to an insured who utilized OCE in the submission of an insurance, or any other document or item which evidences the amount paid directly, and/or indirectly by the insured, insurer or some other person for the utilization of OCE or any third-party directly and/or indirectly affiliated with the submission of the homeowner's insurance claim.

2. As it relates to MAS Collections ("MAS"), any materials, documents or items which evidence: monies paid to, or received by you, from, MAS; financial and ownership interest of any person or entity of any person or entity who owns or operates MAS; MAS' corporate records; and any and all monies that you, or some other person with whom you have a familial and/or business relationship with in connection with the services that they provide, paid and/or received from MAS.

3. As it relates to any person and/or entity that provides any type of service for an insured in relation to the submission of homeowner's insurance claims that you stand to derive any direct and/or indirect financial benefit, any materials, documents or items which evidence: monies paid to, or received from, said person or entity, including any monies paid to, or receive from, any entity that you have ownership or financial interest in; and monies paid to, or received from, any other person with whom you have a familial and/or business relationship with in connection with the services said person or entity provided.

4. As it relates to any business or entity that you have an ownership, management and/or financial interest in, and to the extent that they are directly and/or indirectly providing any type of service or product in relation to the submission of homeowner's insurance claims, or deriving some direct and/or indirect benefit therefrom, provide the following for the last three calendar years: tax returns; bank records; accounting statements; credit card statements; any leases associated with the operations; any documents evidencing the assets of the business; accounting statements; expense forms; drafts issued; closing statements; corporate records; bylaws; tax forms issued and/or received; billing ledgers; invoices; estimates; proposals; records of any transactions; contracts that were in force; and any other document which evidences your interests, profits gained, losses

A4732

incurred, expenses occurred and the persons and entities who profited or incurred a loss in relation thereto.

5.  All estimates which convey that OCE assessed the scope and/or value of an insurance claim, and included therewith, any all letters or drafts which reflect the amounts paid by the insurer in which the OCE estimate was utilized, the net amount received by the insured, and the distributions received by any other person or entity that had any direct and/or indirect involvement in the claim that was presented to the insurer for payment.

**PLEASE CONTACT MY OFFICE AT (954) 248-2920 UPON RECEIPT OF THIS SUBPOENA.**

**PLEASE ADVISE MY OFFICE SHOULD AN INTERPRETER BE REQUIRED AT THE HEARING**

You are Subpoenaed to appear by the following attorneys and unless excused from this Subpoena by these attorneys or the Court, you shall respond to this Subpoena as directed.

**DATED** this August 18, 2017

BRYAN FISCHER, ESQ
Florida Bar # 117711

A4733

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2015-022872 CA 01

BARBARA & HECTOR SANTOS,

     Plaintiff,

vs.

SOUTHERN FIDELITY PROPERTY
& CASUALTY, INC.,

     Defendant

_____/

## SUBPOENA DUCES TECUM FOR EVIDENTIARY HEARING ON AUGUST 24, 2017 AT 10:15 AM

To:   Andrew Barnard, Esq.
     Barnard Law Offices, L.P.
     9655 South Dixie Highway, Suite 200
     Miami, FL 33156

**YOU ARE HEREBY COMMANDED** to appear before the Honorable Pedro P. Echarte at the Miami-Dade County Courthouse, 73 West Flagler Street, Miami, FL. 33130, Room DCC 511, on August 24, 2017 at 10:15 A.M. to testify in the above-styled cause and to have with you at that time the following:

**Definitions and Instructions: Unless specifically indicated otherwise, the scope is limited to a period of 3 years from the date of the subpoena, and "you" or "your," includes any person or entity that you have joint, shared or aligned financial and/or business interests with in the submission of homeowner's insurance claims, or any person or entity that you utilize in the operations associated with the submission of an insurance claim.**

    1.  Any and all invoices and estimates from Omni Expert Consulting ("OCE"), as well as any other materials, documents or items which evidence: monies paid to you, or received from, OCE; financial and ownership interests of any person or entity affiliated with OCE; all direct and/or indirect benefactors of OCE; any direct and/or indirect financial benefit received by any person that you have a familial and/or business affiliation with, including, payments paid to the business/entity associated with said person; the managers and operators of OCE; any retainer agreements or contracts

between OCE and an insured who is pursuing a homeowner's insurance claim on your behalf; any closing statements issued to an insured who utilized OCE in the submission of an insurance, or any other document or item which evidences the amount paid directly, and/or indirectly by the insured, insurer or some other person for the utilization of OCE or any third-party directly and/or indirectly affiliated with the submission of the homeowner's insurance claim.

2.  As it relates to MAS Collections ("MAS"), any materials, documents or items which evidence: monies paid to, or received by you, from, MAS; financial and ownership interest of any person or entity of any person or entity who owns or operates MAS; MAS' corporate records; and any and all monies that you, or some other person with whom you have a familial and/or business relationship with in connection with the services that they provide, paid and/or received from MAS.

3.  As it relates to any person and/or entity that provides any type of service for an insured in relation to the submission of homeowner's insurance claims that you stand to derive any direct and/or indirect financial benefit, any materials, documents or items which evidence: monies paid to, or received from, said person or entity, including any monies paid to, or receive from, any entity that you have ownership or financial interest in; and monies paid to, or received from, any other person with whom you have a familial and/or business relationship with in connection with the services said person or entity provided.

4.  As it relates to any business or entity that you have an ownership, management and/or financial interest in, and to the extent that they are directly and/or indirectly providing any type of service or product in relation to the submission of homeowner's insurance claims, or deriving some direct and/or indirect benefit therefrom, provide the following for the last three calendar years: tax returns; bank records; accounting statements; credit card statements; any leases associated with the operations; any documents evidencing the assets of the business; accounting statements; expense forms; drafts issued; closing statements; corporate records; bylaws; tax forms issued and/or received; billing ledgers; invoices; estimates; proposals; records of any transactions; contracts that were in force; and any other document which evidences your interests, profits gained, losses

incurred, expenses occurred and the persons and entities who profited or incurred a loss in relation thereto.

5. All estimates which convey that OCE assessed the scope and/or value of an insurance claim, and included therewith, any all letters or drafts which reflect the amounts paid by the insurer in which the OCE estimate was utilized, the net amount received by the insured, and the distributions received by any other person or entity that had any direct and/or indirect involvement in the claim that was presented to the insurer for payment.

**PLEASE CONTACT MY OFFICE AT (954) 248-2920 UPON RECEIPT OF THIS SUBPOENA.**

**PLEASE ADVISE MY OFFICE SHOULD AN INTERPRETER BE REQUIRED AT THE HEARING**

You are Subpoenaed to appear by the following attorneys and unless excused from this Subpoena by these attorneys or the Court, you shall respond to this Subpoena as directed.

DATED this August 18, 2017

JOSE P. FONT, ESQ.
Florida Bar #: 0738719
ANDREA RAMOS, ESQ.
Florida Bar # 118866
BRYAN FISCHER, ESQ.
Florida Bar # 117711

A4736

8/18/17  5:30p

TR #1588

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2015-022872 CA 01

BARBARA & HECTOR SANTOS,

    Plaintiff,

vs.

SOUTHERN FIDELITY PROPERTY
& CASUALTY, INC.,

    Defendant.

_____/

## SUBPOENA DUCES TECUM FOR EVIDENTIARY HEARING ON AUGUST 24, 2017 AT 10:15 AM

To:   **The designated representative pursuant to Fla. R. Civ. P. 1.310(b)(6) from the Barnard Law Offices regarding the following area of inquiry:**
Barnard Law Offices, L.P.
9655 South Dixie Highway, Suite 200
Miami, FL 33156

**YOU ARE HEREBY COMMANDED** to appear before the Honorable Pedro P. Echarte at the Miami-Dade County Courthouse, 73 West Flagler Street, Miami, FL, 33130, **Room DCC 511**, on August 24, 2017 at 10:15 A.M. to testify in the above-styled cause and to have with you at that time the following:

**Definitions and Instructions: Unless specifically indicated otherwise, the scope is limited to a period of 3 years from the date of the subpoena, and "you" or "your," includes any person or entity that you have joint, shared or aligned financial and/or business interests with in the submission of homeowner's insurance claims, or any person or entity that you utilize in the operations associated with the submission of an insurance claim.**

    1.   Any and all invoices and estimates from Omni Expert Consulting ("OCE"), as well as

        any other materials, documents or items which evidence: monies paid to you, or

        received from, OCE; financial and ownership interests of any person or entity affiliated

        with OCE; all direct and/or indirect benefactors of OCE; any direct and/or indirect

        financial benefit received by any person that you have a familial and/or business

        affiliation with, including, payments paid to the business/entity associated with said

person; the managers and operators of OCE; any retainer agreements or contracts between OCE and an insured who is pursuing a homeowner's insurance claim on your behalf; any closing statements issued to an insured who utilized OCE in the submission of an insurance, or any other document or item which evidences the amount paid directly, and/or indirectly by the insured, insurer or some other person for the utilization of OCE or any third-party directly and/or indirectly affiliated with the submission of the homeowner's insurance claim.

2. As it relates to MAS Collections ("MAS"), any materials, documents or items which evidence: monies paid to, or received by you, from, MAS; financial and ownership interest of any person or entity of any person or entity who owns or operates MAS; MAS' corporate records; and any and all monies that you, or some other person with whom you have a familial and/or business relationship with in connection with the services that they provide, paid and/or received from MAS.

3. As it relates to any person and/or entity that provides any type of service for an insured in relation to the submission of homeowner's insurance claims that you stand to derive any direct and/or indirect financial benefit; any materials, documents or items which evidence: monies paid to, or received from, said person or entity, including any monies paid to, or receive from, any entity that you have ownership or financial interest in; and monies paid to, or received from, any other person with whom you have a familial and/or business relationship with in connection with the services said person or entity provided.

4. As it relates to any business or entity that you have an ownership, management and/or financial interest in, and to the extent that they are directly and/or indirectly providing any type of service or product in relation to the submission of homeowner's insurance claims, or deriving some direct and/or indirect benefit therefrom, provide the following for the last three calendar years: tax returns; bank records; accounting statements; credit card statements; any leases associated with the operations; any documents evidencing the assets of the business; accounting statements; expense forms; drafts issued; closing statements; corporate records; bylaws; tax forms issued and/or received; billing ledgers; invoices; estimates; proposals; records of any transactions; contracts that were in force; and any other document which evidences your interests, profits gained, losses

incurred,  expenses occurred and the persons and entities who profited or incurred a loss in relation thereto.

5.  All estimates which convey that OCE assessed the scope and/or value of an insurance claim, and included therewith, any all letters or drafts which reflect the amounts paid by the insurer in which the OCE estimate was utilized, the net amount received by the insured, and the distributions received by any other person or entity that had any direct and/or indirect involvement in the claim that was presented to the insurer for payment.

## PLEASE CONTACT MY OFFICE AT (954) 248-2920 UPON RECEIPT OF THIS SUBPOENA.

## PLEASE ADVISE MY OFFICE SHOULD AN INTERPRETER BE REQUIRED AT THE HEARING

You are Subpoenaed to appear by the following attorneys and unless excused from this Subpoena by these attorneys or the Court, you shall respond to this Subpoena as directed.

DATED this August 18, 2017

JOSE P. FONT, ESQ.
Florida Bar #: 0738719
ANDREA RAMOS, ESQ.
Florida Bar # 118866
BRYAN FISCHER, ESQ.
Florida Bar # 117711

A4739

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

CIRCUIT CIVIL DIVISION

CASE NO. 2015-022872 CA 01 (20)

HECTOR AND BARBARA SANTOS,

        Plaintiff.

v.

SOUTHERN FIDELITY INSURANCE
COMPANY,

        Defendant.

_____/

### [Proposed] ORDER ON
### BARNARD'S *URGENT* MOTION FOR PROTECTION, TO QUASH THE *DUCES TECUM* PORTION OF THE SUBPOENAE, RESPONSE TO AND OBJECTION TO DEFENDANT'S 'SUBPOENA DUCES TECUM FOR EVIDENTIARY HEARING' ON AUGUST 24, 2017 AT 10:15 A.M. SERVED ON AUGUST 18, 2017, as to ANDREW C. BARNARD, Sr., BRANDY RAULERSON, MAXWELL BARNARD AND THE DESIGNATED REPRESENTATIVE PURSUANT TO FLA. R. CIV. P. 1.310 (b)(6) FROM THE BARNARD LAW OFFICES

THIS CAUSE came on to be heard on Barnard Law Offices, L.P. August 20, 2017, urgent

motion for protection and to quash the three subpoenae *duces tecum* served upon it and them on

August 18, 2017 as it relates to the documents requested in said subpoenae on the grounds stated

in the motion and on behalf of the individuals Andrew C. Barnard, Sr., Maxwell Barnard and

Brandy Raulerson, and the court, upon consideration of the motion with its attachments

ORDERS and ADJUDGES:

1.     The motion is urgent as a hearing is scheduled for Thursday, August 24, 2017, and

    application for protection was timely made.

2.     The *duces tecum* portion of the subpoenae issued by Defendant's counsel and served

upon Barnard Law Offices, Andrew C. Barnard, Sr., Maxwell Barnard and Brandy Raulerson are hereby quashed as harassing, overbroad, irrelevant, violative of multiple privileges, and over burdensomely invasive and oppressive and duplicative as far as any issue in this case.

3.   Barnard's motion is GRANTED.  The *duces tecum* provisions in said subpoenae are quashed, and Barnard Law Offices, L.P., Andrew C. Barnard Sr., Maxwell Barnard, and Brandy Raulerson are released from any obligation to produce any of the documents requested therein for the reasons expressed in the motion and in this order.

4.   Barnard is entitled to fees and costs on this motion.

DONE and ORDERED in chambers, at Miami-Dade County, Florida on August ___,

2017.

_____
CIRCUIT COURT JUDGE

cc:   Andrew C. Barnard, Esquire
      Jose Font, Esquire.

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

CIRCUIT CIVIL DIVISION

CASE NO. 2015-022872 CA 01 (20)

HECTOR AND BARBARA SANTOS.

        Plaintiff.

v,

SOUTHERN FIDELITY INSURANCE
COMPANY,

        Defendant.

_____/

### BARNARD'S *URGENT* MOTION FOR PROTECTION, TO QUASH THE *DUCES TECUM* PORTION OF THE SUBPOENAE,  RESPONSE TO AND OBJECTION TO DEFENDANT'S 'SUBPOENA DUCES TECUM FOR EVIDENTIARY HEARING'  ON AUGUST 24, 2017 AT 10:15 A.M. SERVED ON AUGUST 18, 2017, as to ANDREW C. BARNARD, Sr., BRANDY RAULERSON, MAXWELL BARNARD AND THE DESIGNATED REPRESENTATIVE PURSUANT TO FLA. R. CIV. P.  1.310 (b)(6) FROM THE BARNARD LAW OFFICES

Barnard Law Offices, L.P., by and through  Andrew C. Barnard, Sr.  as its managing

member, as well as Andrew C. Barnard, Sr. individually, Maxwell Barnard, and Brandy

Raulerson [collectively 'Barnard'], and Barnard Law Offices, L.P., as former counsel for

plaintiff, moves the court for protection and further moves for fees and costs against Defendant,

(or for sanctions against Defendant's  attorneys for their bad faith of issuance of subpoenae

against this law firm and its individual associate lawyers), saying:

1.  A protective order should be granted when the pleadings, at the time a trial court rules upon a

motion for protective order, indicate that the financial records of a nonparty are not related to any

pending claim or defense, and do not indicate that the information is shown to be reasonably

A4742

calculated to lead to the discovery of admissible evidence. *Jerry's South, Inc. v. Morran*, 582 So.2d 803 (Fla. 1st DCA 1991). *Walter v. Page*, 638 So. 2d 1030, 1031 (Fla. 2d DCA1994).

2. The only issue before the court is whether some unnamed staff person of Barnard Law Offices, L.P. participated in Barbara Santos forging of a proof of loss which was notarized on January 31, 2014, which was submitted to Southern Fidelity sometime thereafter in 2014, and who responded to the proof of loss with a denial on August 4, 2014. Defendant maintains that Barnard Law Offices, L.P. participated in the procurement of the forged document. This is a contested factual issue.

3. To the contrary, Barnard Law Offices, L.P. maintains, and the documents show, that the proof of loss was executed and submitted by Barbara Santos over a year before she met anyone at Barnard Law Offices, L.P.

4. Defendant seeks its attorney's fees and costs incurred in having to defend the action under the 'inequitable conduct' doctrine, (or under rules 1.280 and 1.380 of the Florida Civil Procedure rules which has no application in this situation). Liability for 'inequitable conduct' requires strict proof of some misconduct directly related to the claim with a specific finding of bad faith thereof. *Moakley v Smallwood*, 826 So. 2d 21 (Fla. 2002)[1]. Information from other claims is thus irrelevant.

5. However, Defendant mistakenly theorizes that the theory of inequitable conduct is proven by 'evidence' of Barnard Law Offices, L.P.'s involvement with other claims. Not only is the theory ridiculous, but the claim thus advanced in this 'amended' motion for sanctions violates due

---

[1] "the trial court needed to make an express finding of bad faith conduct and to support it by detailed factual findings describing the specific acts of bad faith conduct; and the due process clause required notice and an opportunity to be heard".

process.  First, the other claims must be relevant to this claim, and the alleged frauds in other

claims must be specifically identified.  Mr. Font cannot embark on a search warrant type of *duces*

*tecum* adventure in the hope of finding some credible evidence.

6.  In this case, Barbara Santos was paid $4,749 on 10/21/ 2013 for the kitchen leak claim while

she was represented by Omni Claims Consultants pursuant to a public adjusting contract dated

9/24/13². The allegations in Barbara Santo's affidavit on page 4 of her affidavit at Par. 11(d) that

these proceeds where 'divided through the Barnard Law Offices per terms and conditions that are

unknown to me at this point' admittedly fail pursuant to Barbara Santos' own testimony on June

28, 2017 in *Russo v Southern Fidelity*:

[pg. 80:11-18]

    11    **Q.  I'm showing you what's been marked for A-10 for**

    12    **identification.  It purports to be a check made payable to**

    13    **Barbara Santos, Hector Santos, and Omni Claims Consultants in**

    14    **the amount of $4,749 on October 21st, 2013.  Is that a check**

    15    **that has your name on it?**

    16    A.  Yes.

    17    **Q.  Did you get any funds from the claim in 2013?**

    18    **A.  I recall getting a payment.**

[pg 81:1-8]

    1    Q.  In the contract that you have with Omni Claims, the

    2    public adjusting firm, you had to pay them a percentage, true?

---

² [ pg. 73:18 - 74:1 ]

    18    Q.  I'm giving you a document marked A-8 for ID, I guess --

    19        THE CLERK:  Yes.

    20    Q.  -- that purports to be a contract with Omni Claims, a

    21    public adjusting firm, with your signature on it.  Is that

    22    your signature?

    23    A.  Yes, sir.

    24    Q.  And can you tell the Court the date of that public

    25    adjusting contract?

    1    A.  September 24th, 2013.

No. 15-22872 CA (01), Barnard's Urgent Motion for Protection on Subpoenae, Page 3

```
3    A.  That's true.
4    Q.  Okay.  And that's why this check is made payable to you
5    and your husband and Omni Claims —
6    A.  Um-hum.
7    Q.  — true?
8    A.  Yes.
```

Of course, the check did not have Barnard Law Offices, L.P.'s name on it because Barnard Law

Offices, L.P. had nothing to do with the claim in 2013 or 2014.  Mrs. Santos confirms that she

has no knowledge of any 'fee splitting' or division of any insurance proceeds in her case.  This

explains why Defendant cannot show any such proofs:

[pg. 94: 3-15]
```
3    Q.  You have absolutely no knowledge for this Court about
4    any financial relationship between Omni Expert Consulting and
5    the Barnard Law Office.
6    A.  No.
7    Q.  True?  Okay.  Yeah, you don't say that there is
8    even -- that even one exists at this point, true?
9    A.  I'm sorry?
10   Q.  You cannot testify that any financial relationship
11   exists between Omni and Barnard Law Office, true?
12   A.  No, I don't know that.
13   Q.  Okay, you don't have any information for this Court,
14   right?
15   A.  I don't know that, no.  For sure?  No.
```

[pg 94:25-96-12]
```
25   Q.  You say here that "prior to the lawsuit being filed,
1    there was a payment made by the insurance company, and the
2    distribution of the proceeds were divided to the Barnard Law
3    Offices per the terms and conditions that are unknown to me at
4    this point".  That's on page 4, paragraph D?
5    A.  Yes.
6    Q.  Okay.  Are you talking about the check for $4,000 was
7    divided with the Barnard Law Office?
8    A.  No.
9    Q.  What proceeds?
10   A.  I was told about a check that was made out for $15,000.
```

No. 15-22872 CA (01), Barnard's Urgent Motion for Protection on Subpoenae, Page 4

A4745

11 From what I heard.

12 Q. By whom?

13 A. By the insurance company.

14 **Q. For 15,000?**

15 A. That's what I heard.

16 Q. Was that from Mr. Font?

17 **A. I heard from my -- from my attorneys.**

18 Q. Oh. So as we sit here today --

19 **A. I'm thinking it's information that they got.**

20 **Q. So you don't have any personal information about any**

21 **$15,000, true?**

22 A. Nothing has been -- no -- noth -- no -- nothing has

23 been given to us. We've asked for -- for the documents. You

24 guys have not provided stuff.

25 Q. When you ask for documents, madam, if we don't have

1 documents, we can't give them to you, right?

2 A. Obviously.

3 Q. And when you ask for documents with respect to closing

4 statements on funds that never even went through our office,

5 that would be something that would be impossible to provide

6 you, right?

7 A. I don't under -- I can't hear you.

8 Q. No problem. The Liberty check, you saw that earlier?

9 A. Yeah.

10 **Q. Okay, that went straight to Liberty, as far as you**

11 know. It had nothing to do with the Barnard Law Office, true?

12 A. I guess, yes.

7. Furthermore, Mrs. Santos cannot name anyone as the so called participants of the 'forgery' and Barbara Santos doesn't even know when it supposedly happened because she cannot confirm any dates because she does not remember: [pg. 88:24-25: "I'm not going to confirm on any dates because I don't remember."]. Thus, she had no testimony on the 'date' that she was told to put her husband's name on the proof of loss because she does not know of any dates. However, if such happened at all, it had to happen sometime before August of 2014.

8. As this 'forgery' theory is turning out to be a giant 'nothing burger' Defendant is 'trying out' a

A4746

new theory about supposed proofs from other unrelated lawsuits which are not before this court, and not relevant to this claim.

9.   This information in this case of participation by Barnard Law Offices, L.P., of some specific inequitable misconduct and proof thereof is central and critical for any 'inequitable conduct' findings  as to why sanctions which are sought against Barbara Santos for her perjury and insurance fraud should be imposed against Barnard Law Offices, L.P. or any of its associate members.

10.  The proofs do not exist.  Defendant has lost focus in its 'witchhunt'.  After 2 days of wasted time in evidentiary hearings, no proofs have been shown as to any relevant issue or any inequitable misconduct.  In fact, the evidence points to Jose Font being involved in suborning perjury from Barbara Santos with the participation of Gigi Carbonnell.  In fact, the proofs show that Barnard Law Offices, L.P. had nothing to do with kitchen water leak claim until retained on September 15, 2015, two years after Mrs. Santos received over $4,000 from Southern Fidelity with a check that Barnard Law Offices, L.P. had no participation with.  The evidence is clear that Mrs. Santos simply stole the insurance proceeds from her husband, who did not receive any of the money.  The January 31, 2014 proof of loss was submitted independently from Barnard Law Offices, L.P. by Omni Claims, and was rejected by Southern Fidelity on August 4, 2014. Defendant's claim against Barnard Law Offices, L.P. for some type of inequitable conduct related to this case will fail because (1) it did not happen; (2) thus, the proof simply does not exist.

11.   Seeing its case collapse around it, defendant has decided to attempt to 'move the target'.  It cannot be permitted to do so.  Such is not relevant to claims in this case.  Additionally, such

No. 15-22872 CA (01), Barnard's Urgent Motion for Protection on Subpoenae, Page 6

A4747

would be a prohibited collateral matter which is not relevant in the least.

12.     Defendant improperly seeks to expand its inquiry into that of a Grand Inquisitor or 'Special Prosecutor' from Congress by seeking a wholesale production of all of Barnard Law Offices, L.P.'s financial records as well as financial records from companies with which Barnard Law Offices, L.P. does business as well as personal income tax information of both Andrew Barnard, Sr., his wife, Maxwell Barnard and his wife, and Brandy Raulerson and her parents as shown by the attached subpoenae [Exhibit B] served upon them on August 18, 2017.

13.   As shown herein, none of the items in the *duces tecum* are relevant to the issues in this case, are not raised in any pleading, and are not before the court on any actionable pleadings. For example, as an illustration, suppose Andrew Barnard, Sr. owned an interest in Omni Expert Consulting, Inc. or LLC. So what? This is not illegal [and not true anyway]. Moreover, since Omni Expert Consulting, Inc. had no involvement in this case, information from that entity is totally irrelevant. However, it is clear that Defendant, in its insane drive and preoccupation to harass Andrew C. Barnard, Sr., Maxwell Barnard, and Barnard Law Offices, L.P., generally and Brandy Raulerson specifically, seeks any and all financial information related to Barnard Law Offices, L.P, Omni Expert Consulting, Inc. (or LLC) and MAS Collections [which has nothing to do with anything as far as Barnard knows] without any predicate basis for such information to show how it relates to this claim where Omni Expert Consulting Inc. also had nothing to do with the claim. The only Omni involved in this case was Omni Claims, a public adjusting firm, whose involvement ceased on or about August 4, 2014.

14.   The instant subpoenae compels production of a vast array of documents from the Plaintiff (the entire business records and tax returns of both Barnard Law Offices, and the personal tax

information of Andrew C. Barnard) without any degree of specificity, both as Barnard

collectively, and to Ms. Raulerson, rendering the subpoena objectionable on its face under *Gen.*

*Elec. Capital Corp. v. Nunziata*, 124 So. 3d 940, 943 (Fla. 2d DCA 2013).

15.   The subpoena also invades the attorney client privilege[3], the work product privilege, the

marital privilege, and the financial information privilege under Art. 1, Sec. 23 of the Florida

Constitution, and is overburdensome to Plaintiff's former counsel who would have to dedicate

many hours to comply to marshal up the information which is privileged on its face, and compile

it, assuming any of the information is relevant to anything properly before the court.  However,

this is unnecessary as a request for the entire business records and personal business life of the

owner of Barnard Law Offices, L.P. as well as the same for an unrelated company, MAS

Collections, LLC, is simply objectionable on its face (and defendant is well aware of this).

Defendant must show a reasoned and perfected hardship to violate work product and attorney

client privileges, after first demonstrating relevant, which Defendant has abjectly failed to do.

*Butler v. Harter*, 152 So. 3d 705, 712 (Fla. 1st DCA 2014).

16.   Similarly, the overbreath and invasiveness is indicative of a prohibited 'fishing' expedition[4],

---

[3] The Subpoenae are attached hereto as composite B. Also attached are specific objections to each individual item in the subpoenae as composite Exhibit A, incorporated herein by reference.  All of the *duces tecum* information is objected to by this pleading and protection is sought with a specific finding that the *duces tecum* portions of the subpoenae are harassment, irrelevant and overbroad as a prohibited fishing expedition, under *Gen. Elec. Capital Corp. v. Nunziata*, 124 So. 3d 940, 943 (Fla. 2d DCA 2013).

[4] We noted, as we note again here, that a "subpoena duces tecum is not the equivalent of a search warrant and should not be used as a fishing expedition to require a witness to produce broad categories of documents which the party can search to find what may be wanted." Id. (citing *Palmer v. Servis*, 393 So.2d 653 (Fla. 5th DCA 1981)). This is especially true where the person subject to the subpoena is not the judgment debtor. *See, e.g., Jim Appley's Tru-Arc, Inc. v. Liquid Extraction Sys. Ltd. P'ship*, 526 So.2d 177, 179 (Fla. 2d DCA 1988) (prohibiting

A4749

motivated by malice, spite and revenge.  Income information of a law firms finances is simply not relevant to any issue before the court. It is also over burdensome and not calculated to lead to any relevant or admissible evidence, first because neither MAS collections or Omni Expert Consulting had anything to do with this case.  Defendant has simply embarked upon an illegal and unauthorized 'fishing expedition' attempting to prove up an irrelevant suspicion of fee splitting in a case where there were no attorney's fees.  How ridiculous can the Defendant be.  Where were there any attorneys' fees in this case?  None exist. Fee splitting is irrelevant.

17. The instant subpoenae consist of nothing more that a vast 'fishing expedition' seeking to compel production of a vast array of documents from the former Plaintiff's counsel regarding extremely private financial information covering its entire business over the last three years including tax returns, bank records, and private financial information as well as confidential client information, none of which has anything at all related to the above styled case. There is no designation of any degree of specificity as to how the requested items relate to any issue in this

---

discovery by judgment creditor into separate income and assets of judgment debtor's wife). If a proper predicate is laid, someone other than the judgment debtor may be required to submit to financial discovery, but in this case, Mr. Nunziata's counsel has not laid the proper predicate. Cf. *Jerry's S., Inc. v. Morran*, 582 So.2d 803 (Fla. 1st DCA 1991) (granting writ of certiorari and quashing pretrial order requiring nonparty corporate defendants to produce all business records of the corporations in plaintiff's search for information regarding ownership of bar that provided service to allegedly intoxicated patron who subsequently threatened and struck plaintiff).

*Gen. Elec. Capital Corp. v. Nunziata*, 124 So. 3d 940, 943 (Fla. 2d DCA 2013).
We agree with the appellant that the subpoena duces tecum was too broad. The rule authorizing a subpoena duces tecum requires some degree of specificity, and the documents or papers sought should be designated with sufficient particularity to suggest their existence and materiality. *Palmer v. Servis*, 393 So.2d 653 (Fla. 5th DCA 1981); Fla.R.Civ.P. 1.350(a). The subpoena in the instant case was too broad in seeking virtually all of appellant's personal financial documents. The subpoena duces tecum is not the equivalent of a search warrant, and should not be used as a fishing expedition to require a witness to produce broad categories of documents which the party can search to find what may be wanted. *Palmer*.

No. 15-22872 CA (01), Barnard's Urgent Motion for Protection on Subpoenae, Page 9

case, regarding Mrs. Santos or Mr. Santos. Moreover, Ms. Raulerson, Andrew C. Barnard, Sr.,

Maxwell Barnard, or Barnard Law Offices, L.P. have produced all documents in their possession

and control pursuant to prior subpoenae which consisted of over 11 thousand pages of

documents. Essentially, Defendant seeks to 'fish' for information which does not exist relevant

to this case by casting a net to search all of Barnard's records in a clear effort to harass Barnard

Law Offices, L.P., and its associates. This 'search warrant' mentality shown by Mr. Font, and

the resulting subpoenae which he has 'unleashed' upon Barnard Law Offfices, L.P. has been

repeatedly condemned in other cases. It is harassment. Moreover, Mr. Font is in wanton

violation of a court order by asking for such information from Brandy Raulerson who has

obtained a restraining order against Mr. Font for precisely this type of activity. The subpoenae

are objectionable on their faces under *Gen. Elec. Capital Corp. v. Nunziata*, 124 So. 3d 940, 943

(Fla. 2d DCA 2013). A duces tecum is not a license for a search warrant and cannot be used for

a fishing expedition.

> "We noted, as we note again here, that a "subpoena duces tecum is not the equivalent of a
> search warrant and should not be used as a fishing expedition to require a witness to
> produce broad categories of documents which the party can search to find what may be
> wanted." *Palmer v. Servis*, 393 So.2d 653 (Fla. 5th DCA 1981)).
> *Gen. Elec. Capital Corp. v. Nunziata, supra.*

WHEREFORE , Barnard Law Offices, L.P., Brandy Raulerson, Max Barnard, and

Andrew C. Barnard, Sr. pray that their motion for protection be granted, that the duces tecum

portion of the attached subpoenae be quashed as harassing, repetitive, overbroad, and that the

court tax the costs of this motion against Defendant pursuant to Fla. R. Civ. P. 1.280( c), in

conjunction with Rule 1.380.

### CERTIFICATE OF SERVICE

No. 15-22872 CA (01), Barnard's Urgent Motion for Protection on Subpoenae, Page 10

A4751

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent by email via the efiling portal or directly to the designees of record, and the following others, if any, on the following date: August 20, 2017.

Respectfully Submitted,
Barnard Law Offices, L.P.
9655 So. Dixie Highway, Suite 200
Miami, FL. 33156
305-665-0000/ fax 305-669-9666
Email: abarnard@barnardlawlp.com

/s/ Andrew C. Barnard
By: ......................
Andrew C. Barnard, Fl. B.No. 281697

A4752

**EXHIBIT A**

Specific objections to each category of items in each subpoena:

**As to the subpoena against Brandy Raulerson, she objects, moves for protection and to quash the Duce Tecum portion of the subpoenae** and responds as follows: Objection and motion for protection and to quash as to other claims but this claim for documents specifically related to this claim and to quash and for protection - as documents for this claim have already been produced: objection; the *duces tecum* is an overbroad and prohibited fishing expedition prohibited under *Palmer v. Servis*, 393 So.2d 653 (Fla. 5th DCA 1981) and *Gen. Elec. Capital Corp. v. Nunziata*, 124 So. 3d 940, 943 (Fla. 2d DCA 2013), as well as violating the attorney client privilege, the work product privilege, as well as being irrelevant and outside the scope of permissible discovery as not reasonably calculated to lead to relevant or admissible evidence under Fla. R. Civ. P. 1.280(b), and further violates the financial privacy interests of everyone under Florida's constitutional Right to privacy.

 **As a predicate, all information for this claim has been submitted and was submitted on July 7, 2017, as shown by the notice of compliance with prior subpoenae.** Thus the *duces tecum* portion of the subpoenae must be quashed and protection granted as the request for the information is duplicative and abusive and harassing as it seeks records already produced.

 As to this claim, Omni Expert Consulting had nothing to do with it. Thus there is no estimate on this claim which assesses the scope or value. Moreover, there was no distribution of any insurance proceeds in this claim to anyone by Barnard Law Offices, L.P. The only insurance proceeds involved in this claim were received by the insured and third parties two years before Barnard Law Offices, L.P. became aware of the claim.

  **Item 1. Any and all invoices and estimates from Omni Expert Consulting ("OCE") as well as any other materials, documents or items which evidence monies paid to you, or received from, OCE; financial and ownership interest of any person or entity affiliated with OCE; all direct and/or indirect benefactors of OCE; any direct and/or indirect financial benefit received by any person that you have a familial and/or business affiliation with, including, payments paid to the business/entity associated with said person; the managers and operators of OCE; any retainer agreements or contracts between OCE and an insured who is pursuing a homeowner's insurance claim on your behalf; any closing statements issued to any insured who utilized OCE in the submission of an insurance, or any other documents or item which evidences the amount paid directly, and/or indirectly by the insured, insurer or some other person for the utilization of OCE or any third-party directly and/or indirectly affiliated with the submission of the homeowner's insurance claim.**

**RESPONSE:** Objection and motion for protection and to quash as to other claims but this claim for documents specifically related to this claim and to quash and for protection as documents for this claim have already been produced. Objection: overbroad, attorney client privileged, work product privileged, irrelevant and outside the scope of permissible discovery as not reasonably calculated to lead to relevant or admissible evidence, violates the financial privacy interests of

A4753

everyone. As a predicate, all information for this claim has been submitted and was submitted on July 7, 2017, as shown by the notice of compliance with prior subpoenae. Thus the *duces tecum* portion of the subpoenae must be quashed and protection granted as it seeks records already produced and is otherwise harassing, abusive, and irrelevant.

Ms. Raulerson does not have any personal records covering any of the items requested by Mr. Fischer, who is the associate of Mr. Font, who is acting as the authorized agent for Southern Fidelity Insurance Company, within the scope of his agency. Moreover, the items requested in this category are objected to based upon:(1) vague, overbroad, invasive of the attorney client privilege, invasive of the work product privilege, violation of confidentiality agreements in settlements, violation of confidential nature of settlement negotiations, violation of Florida's constitutional right to privacy in its financial matters under Art. 1, Sec. 23, Fla. Const. as interpreted by *Spry v. Professional Employer Plans, Inc.*, 985 So. 2d 1187 (Fla. 1st DCA 2008), and its progeny; marital privilege of Andrew C. Barnard. Additionally, Ms. Raulerson has no access to such information, nor any right to seek such information from service providers and experts utilized by Barnard Law Offices, L.P., none of which has anything to do with this case anyway. Defendant has failed to establish any relevance of the requested information to any issue in this case, and thus the fishing information sought is outside the scope of permissible discovery as it is not relevant nor calculated to lead to admissible evidence. Additionally, the information sought is barred under the collateral matter impeachment rule. Additionally, the requested information is over burdensome to assimilate and overbroad, intentionally structured to harass Ms. Raulerson in blatant violation of a restraining order entered on July 31, 2017, and extended by request of Mr. Font on August 16, 2017. Mr. Font has violated this order by having his employee Bryan Fischer sign the subpoena. However, Mr. Font cannot avoid his contempt of the court order by use of a nominee to harass Ms. Raulerson. Mr. Font knows darn well that Ms. Raulerson did not become an attorney until 2015 and also knows from past production that she does not have any personal files on any client of Barnard Law Offices, L.P. nor is she privy to any financial information. The subpoena was issued with the sole objective of causing anxiety in Ms. Raulerson.

> **Item 2. As it relates to MAS Collections ("MAS"), any materials, documents or items which evidence monies paid to, or received by you, from, MAS; financial and ownership interest of any person or entity of any person or entity who owns or operates MAS; MAS corporate records; and any and all monies that you, or some other person with whom you have a familial and/or business relationship with in connection with the services that they provide, paid and/or received from MAS.**

RESPONSE: Objection and motion for protection and to quash as to other claims but this claim for documents specifically related to this claim and to quash and for protection as documents for this claim have already been produced. Objection: overbroad, attorney client privileged, work product privileged, irrelevant and outside the scope of permissible discovery as not reasonably calculated to lead to relevant or admissible evidence, violates the financial privacy interests of everyone. As a predicate, all information for this claim has been submitted and was submitted on July 7, 2017, as shown by the notice of compliance with prior subpoenae. Thus the duces tecum portion of the subpoenae must be quashed and protection granted as it seeks records already produced and is otherwise harassing, abusive, and irrelevant.

No. 15-22872 CA (01), Barnard's Urgent Motion for Protection on Subpoenae. Page 13

A4754

As a predicate, Ms. Raulerson does not have any personal records covering any of the items requested by Mr. Fischer, who is the associate of Mr. Font, who is acting as the authorized agent for Southern Fidelity Insurance Company, within the scope of his agency. Moreover, there is no MAS Collections anywhere in Sunbiz. Regardless, Ms. Raulerson has no business with, records of, or access to any of the information requested by Mr. Font through Mr. Fischer. Moreover, the items requested in this category are objected to based upon:(1) vagueness, overbreath, invasive of the attorney client privilege, invasive of the work product privilege, violation of confidentiality agreements in settlements, violation of confidential nature of settlement negotiations, violation of Florida's constitutional right to privacy in its financial matters under Art. 1, Sec. 23, Fla. Const. as interpreted by *Sprv v. Professional Employer Plans, Inc.*, 985 So. 2d 1187 (Fla. 1st DCA 2008), and its progeny as to the financial and business records of Mas Collections, LLC; the marital privilege of Andrew C. Barnard. Additionally, Ms. Raulerson has no access to such information, nor any right to seek such information from Mas Collections, LLC or any experts utilized by Mas Collections, LLC, none of which has anything to do with this case anyway. Defendant has failed to establish any relevance of the requested information to any issue in this case, and thus the fishing information sought is harassment, and is outside the scope of permissible discovery as it is not relevant nor calculated to lead to admissible evidence. Additionally, the information sought is barred under the collateral matter impeachment rule. Additionally, the requested information is over burdensome to assimilate and overbroad, intentionally structured to harass Ms. Raulerson in blatant violation of a restraining order entered on July 31, 2017, and extended by request of Mr. Font on August 16, 2017. Mr. Font has violated this order by having his employee Bryan Fischer sign the subpoena. However, Mr. Font cannot avoid his contempt of the court order by use of a nominee to harass Ms. Raulerson. Mr. Font knows darn well that Ms. Raulerson did not become an attorney until 2015 and also knows from past production that she does not have any personal files on any client of Barnard Law Offices, L.P. nor is she privy to any financial information. The subpoena was issued with the sole objective of causing anxiety in Ms. Raulerson.

> **Item 3. As it relates to any person and/or entity that provides any type of service for an insured in relation to the submission of homeowner's insurance claims that you stand to derive any direct and/or indirect financial benefit, any materials, documents or items which evidence: monies paid to, or received from, said person or entity, including any monies paid to, or received from, any entity that you have ownership or financial interest in; and monies paid to, or received from, any other person with whom you have a familial and/or business relationship with in connection with the services said person or entity provided.**

RESPONSE: Objection and motion for protection and to quash as to other claims but this claim for documents specifically related to this claim and to quash and for protection as documents for this claim have already been produced. Objection: overbroad, attorney client privileged, work product privileged, irrelevant and outside the scope of permissible discovery as not reasonably calculated to lead to relevant or admissible evidence, violates the financial privacy interests of everyone. As a predicate, all information for this claim has been submitted and was submitted on July 7, 2017, as shown by the notice of compliance with prior subpoenae. Thus the duces tecum portion of the subpoenae must be quashed and protection granted as it seeks records already

No. 15-22872 CA (01), Barnard's Urgent Motion for Protection on Subpoenae, Page 14

A4755

produced and is otherwise harassing, abusive, and irrelevant.

As a predicate, the request is unquestionably vague,  besides seeking privileged information under multiple laws,  burdensome on its face, vague, overbroad and irrelevant and outside the scope of permissible discovery as it is not calculated to lead to relevant evidence or admissible evidence. Ms. Raulerson is an employee of Barnard Law Offices, L.P.  Her salary and bonuses and benefits are completely irrelevant to the issues in this case and violate Ms. Raulerson's right of privacy as to her financial matters under Art. 1, Sec. 23, Fla. Const. as interpreted by *Spry v. Professional Employer Plans, Inc.*, 985 So. 2d 1187 (Fla. 1st DCA 2008), and its progeny. Moreover,  Ms. Raulerson does not have any personal records covering any of the items requested by Mr. Fischer, who is the associate of Mr. Font, who is acting as the authorized agent for Southern Fidelity Insurance Company, within the scope of his agency. Moreover, the items requested in this category are objected to based upon:(1) vagueness, overbreath, invasive of the attorney client privilege, invasive of the work product privilege, violation of confidentiality agreements in settlements for past cases, as well as work product on pending cases, violation of confidential nature of settlement negotiations; and the marital privilege of Andrew C. Barnard.  Additionally, Ms. Raulerson has no access to such information, nor any right to seek such information from service providers and experts utilized by Barnard Law Offices, L.P., none of which has anything to do with this case anyway.  Defendant has failed to establish any relevance of the requested information to any issue in this case, and thus the fishing information sought is outside the scope of permissible discovery as it is not relevant nor calculated to lead to admissible evidence.  Additionally, the information sought is barred under the collateral matter impeachment rule. Additionally, the requested information is over burdensome to assimilate and overbroad, intentionally structured to harass Ms. Raulerson in blatant violation of a restraining order entered on July 31, 2017, and extended by request of Mr. Font on  August 16, 2017.  Mr. Font has violated this order by having his employee Bryan Fischer sign the subpoena. However, Mr. Font cannot avoid his contempt of the court order by use of a nominee to harass Ms. Raulerson. Mr. Font knows darn well that Ms. Raulerson did not become an attorney until 2015 and also knows from past production that she does not have any personal files on any client of Barnard Law Offices, L.P. nor is she privy to any financial information. The subpoena was issued with the sole objective of causing anxiety in Ms. Raulerson.

> **4. As it relates to any business or entity that you have an ownership, management and/or financial interest in, and to the extent that they are directly and/or indirectly providing any type of service or product in relation to the submission of homeowner's insurance claims, or deriving some direct and/or indirect benefit therefrom, provide the following for the last three calendar years: tax returns; bank records; accounting statements, credit card statements; any leases associated with the operations; any documents evidencing the assets of the business; accounting statements; expense forms; drafts issued; closing statements; corporate records; bylaws; tax forms issued and/or received; billing ledgers; invoices; estimates; proposals; records of any transactions; contracts that were in force; and any other document which evidences your interest, profits gained, losses incurred, expenses**

A4756

occurred and the persons and entities who profited or incurred a loss in relation thereto.

**RESPONSE:** Objection and motion for protection and to quash as to other claims but this claim for documents specifically related to this claim and to quash and for protection as documents for this claim have already been produced. Objection: overbroad, attorney client privileged, work product privileged, irrelevant and outside the scope of permissible discovery as not reasonably calculated to lead to relevant or admissible evidence, violates the financial privacy interests of everyone. As a predicate, all information for this claim has been submitted and was submitted on July 7, 2017, as shown by the notice of compliance with prior subpoenae. Thus the duces tecum portion of the subpoenae must be quashed and protection granted as it seeks records already produced and is otherwise harassing, abusive, and irrelevant.

This request seeks the entire business records of Barnard Law Offices, L.P. and any and all other businesses owned by Andrew C. Barnard, Maxwell Barnard or any family member of theirs for the last three calendar years. Defendant has no right to such information at all. Maxwell Barnard nor Ms. Raulerson have any business entity or business interest in any other entity involved in homeowner claims other than their respective licenses to practice law in The State of Florida [which Mr. Font has expressly threatened to seek revocation of]. They are employees of the Barnard Law Offices, L.P. and have no ownership, management and or financial interest therein other than their lawyer remunerations which Mr. Font has no business knowing. Thus, the request doesn't apply to anything that Maxwell Barnard or Ms. Raulerson does,, and has nothing to do with this lawsuit and is merely harassment. It is invasive and burdensome on its face, vague, overbroad and irrelevant and outside the scope of permissible discovery as it is not calculated to lead to relevant evidence or admissible evidence related to this case. Ms. Raulerson is an employee of Barnard Law Offices, L.P. Their remunerations and benefits are completely irrelevant to the issues in this case and violate their rights of privacy as to their financial matters under Art. 1, Sec. 23, Fla. Const. as interpreted by *Spry v. Professional Employer Plans, Inc.*, 985 So. 2d 1187 (Fla. 1st DCA 2008), and its progeny. Similarly, the information clearly violates this same right to privacy and privilege held by Barnard Law Offices, L.P. Moreover, Max Barnard and Ms. Raulerson do not have any personal records covering any of the items requested by Southern Fidelity Insurance Company. Moreover, the items requested in this category are objected to based upon:(1) vagueness, overbreath, invasive of the attorney client privilege, invasive of the work product privilege, violation of confidentiality agreements in settlements for past cases, as well as work product on pending cases, violation of confidential nature of settlement negotiations; and the marital privilege of Andrew C. Barnard. Additionally, Max Barnard, or Ms. Raulerson have no right to access to such information, nor any right to seek such information from service providers and experts utilized by Barnard Law Offices, L.P., none of which has anything to do with this case anyway. Defendant has failed to establish any relevance of the requested information to any issue in this case, and thus the fishing information sought is outside the scope of permissible discovery as it is not relevant nor calculated to lead to admissible evidence. Additionally, the information sought is barred under the collateral matter impeachment rule. Additionally, the requested information is over burdensome to assimilate and overbroad, intentionally structured to harass Baranrd Law Offices, L.P., Andrew C. Barnard, Sr., Maxwell Barnard, and Ms. Raulerson in blatant violation of a restraining order entered on July

No. 15-22872 CA (01), Barnard's Urgent Motion for Protection on Subpoenae, Page 16

A4757

31, 2017, and extended by request of Mr. Font on August 16, 2017. Mr. Font has violated this order by issuing the subpoenae. However, Mr. Font cannot avoid his contempt of the court order by use of nominees to harass Ms. Raulerson or her co-workers. Mr. Font knows darn well that Ms. Raulerson and Maxwell Barnard did not become attorneys until 2015 and also knows from past production that they do not have any personal files on any client of Barnard Law Offices, L.P. nor is she privy to any financial information of Barnard Law offices, L.P. or any of the experts hired by Barnard Law Offices, L.P. The subpoena was issued with the sole objective of harassing Ms. Raulerson, and her co-workers. They demand protection.

> **5. All estimates which convey that OCE assessed the scope and/or value of an insurance claim, and included therewith any all letters or drafts which reflect the amounts paid by the insurer in which the estimate was utilized, the net amount received by the insured, and the distributions received by any other person or entity that had any direct and/or indirect involvement in the claim that was presented to the insurer for payment.**

**RESPONSE:** Objection and motion for protection and to quash as to other claims but this claim for documents specifically related to this claim and to quash and for protection as documents for this claim have already been produced. Objection and motion for protection and to quash as to other claims but this claim for documents specifically related to this claim and to quash and for protection as documents for this claim have already been produced: objection; the *duces tecum* is an overbroad and prohibited fishing expedition prohibited under *Palmer v. Servis*, 393 So.2d 653 (Fla. 5th DCA 1981) and *Gen. Elec. Capital Corp. v. Nunziata*, 124 So. 3d 940, 943 (Fla. 2d DCA 2013), as well as violating the attorney client privilege, the work product privilege, as well as being irrelevant and outside the scope of permissible discovery as not reasonably calculated to lead to relevant or admissible evidence under Fla. R. Civ. P. 1.280(b), and further violates the financial privacy interests of everyone under Florida's constitutional Right to privacy.

As a predicate, all information for this claim has been submitted and was submitted on July 7, 2017, as shown by the notice of compliance with prior subpoenae. Thus the *duces tecum* portion of the subpoenae must be quashed and protection granted as the request for the information is duplicative and abusive and harassing as it seeks records already produced.

As to this claim, Omni Expert Consulting had nothing to do with it. Thus there is no estimate on this claim which assesses the scope or value. Moreover, there was no distribution of any insurance proceeds in this claim to anyone by Barnard Law Offices, L.P. The only insurance proceeds involved in this claim were received by the insured and third parties two years before Barnard Law Offices, L.P. became aware of the claim.

As a predicate, the request invades multiple privileges under multiple laws, is burdensome on its face, is vague, is overbroad and is irrelevant and outside the scope of permissible discovery as it is not calculated to lead to relevant evidence or admissible evidence in this case. The requested information violates the attorney-client privilege, the confidentiality of the clients' financial and litigation files, the work product privilege for each file and matter, as well as the client's right of privacy as to their respective financial matters under Art. 1, Sec. 23, Fla. Const. as interpreted by *Spry v. Professional Employer Plans, Inc.*, 985 So. 2d 1187 (Fla. 1st DCA 2008), and its progeny. Moreover, Ms. Raulerson does not have any personal records covering any of the items requested by Mr. Fischer, who is the associate of Mr. Font, who is

No. 15-22872 CA (01), Barnard's Urgent Motion for Protection on Subpoenae, Page 17

acting as the authorized agent for Southern Fidelity Insurance Company, within the scope of his agency. Moreover, the items requested in this category are objected to based upon;(1) vagueness, overbreath, invasive of the attorney client privilege, invasive of the work product privilege, violation of confidentiality agreements in settlements for past cases, as well as work product on pending cases, violation of confidential nature of settlement negotiations; and the marital privilege of Andrew C. Barnard. Additionally, Ms. Raulerson has no access to such information, nor any right to seek such information from service providers and experts utilized by Barnard Law Offices, L.P., none of which has anything to do with this case anyway. Defendant has failed to establish any relevance of the requested information to any issue in this case, and thus the fishing information sought is outside the scope of permissible discovery as it is not relevant nor calculated to lead to admissible evidence. Additionally, the information sought is barred under the collateral matter impeachment rule. Additionally, the requested information is over burdensome to assimilate and overbroad, intentionally structured to harass Ms. Raulerson in blatant violation of a restraining order entered on July 31, 2017, and extended by request of Mr. Font on August 16, 2017. Mr. Font has violated this order by having his employee Bryan Fischer sign the subpoena. However, Mr. Font cannot avoid his contempt of the court order by use of a nominee to harass Ms. Raulerson. Mr. Font knows darn well that Ms. Raulerson did not become an attorney until 2015 and also knows from past production that she does not have any personal files on any client of Barnard Law Offices, L.P. nor is she privy to any financial information. The subpoena was issued with the sole objective of causing anxiety in Ms. Raulerson.

A4759

As to Andrew Barnard, individually and as the Designated Representative Pursuant to Fla. R. Civ. P. 1.310 (b)(6) from the Barnard Law Offices, and as to Maxwell Barnard, they object, move for protection and to quash the Duce Tecum portion of the subpoenae and respond as follows:

> Item 1.  Any and all invoices and estimates from Omni Expert Consulting ("OCE") as well as any other materials, documents or items which evidence monies paid to you, or received from, OCE; financial and ownership interest of any person or entity affiliated with OCE; all direct and/or indirect benefactors of OCE; any direct and/or indirect financial benefit received by any person that you have a familial and/or business affiliation with, including, payments paid to the business/entity associated with said person; the managers and operators of OCE; any retainer agreements or contracts between OCE and an insured who is pursuing a homeowner's insurance claim on your behalf; any closing statements issued to any insured who utilized OCE in the submission of an insurance, or any other documents or item which evidences the amount paid directly, and/or indirectly by the insured, insurer or some other person for the utilization of OCE or any third-party directly and/or indirectly affiliated with the submission of the homeowner's insurance claim.

RESPONSE and objection and motion for protection as to Item 1:     Objection and motion for protection and to quash as to other claims but this claim for documents specifically related to this claim and to quash and for protection as documents for this claim have already been produced: overbroad, attorney client privileged, work product privileged, irrelevant and outside the scope of permissible discovery as not reasonably calculated to lead to relevant or admissible evidence, violates the financial privacy interests of everyone.  As a predicate, all information for this claim has been submitted.

As a predicate, Barnard Law Offices, L.P., Andrew Barnard or Maxwell Barnard have no control over any of the financial records of Omni Expert Consulting LLC or Inc.  Maxwell Barnard does not have any personal records covering any of the items requested by Mr. Font, who is acting as the authorized agent for Southern Fidelity Insurance Company, within the scope of his agency. Moreover, the items requested in this category of the *Duces Tecum* are objected to based upon;(1) **relevance** as none of the requested information is reasonably calculated to lead to relevant or admissible evidence. *There is simply nothing in this record to show that Omni Expert Consulting had anything to do with this lawsuit or claim.*  Additionally, the *duces tecum* is object to as vague, overbroad, invasive of the attorney client privilege for other claims and lawsuits, invasive of the work product privilege, violation of confidentiality agreements in settlements, violation of the confidential nature of settlement negotiations, violation of Florida's constitutional right to privacy in a person's financial matters under Art. 1, Sec. 23, Fla. Const. as interpreted by *Spry v. Professional Employer Plans, Inc.*, 985 So. 2d 1187 (Fla. 1st DCA 2008), and its progeny; and the marital privilege of Andrew C. Barnard.  Additionally, Mssrs. Barnard have no access to such information, nor any right to seek such information from service providers and experts utilized by Barnard Law Offices, L.P., none of which has anything to do with this case anyway.  Defendant has failed to establish any relevance of the requested information to any issue in this case, and thus the fishing information sought is outside the scope of permissible

A4760

discovery as it is not relevant nor calculated to lead to admissible evidence. Additionally, the information sought is barred under the collateral matter impeachment rule. Moreover, the requested information is over burdensome to assimilate and overbroad, intentionally structured to harass Mssr. Barnard in blatant violation of a restraining order entered on July 31, 2017, and extended by request of Mr. Font on August 16, 2017. Mr. Font has violated this order by issuing what is obviously a harassing *duces tecum* in these subpoenae. However, Mr. Font cannot shield his obvious contempt of the restraining order by a claim of litigation privilege. He is simply not permitted to harass Ms. Raulerson or her co-workers. Mr. Font knows darn well that Maxwell Barnard did not become an attorney until 2015 and also knows from past production that he nor Andrew Barnard, Sr., have any personal files on any client of Barnard Law Offices, L.P. nor is he privy to any financial of the financial information of Omni Expert Consulting, Inc. (Or LLC) or Omni Claims, or other businesses relevant to this claim. The subpoena was issued with the sole objective of causing anxiety in Ms. Raulerson, Mr. Maxwell Barnard, Mr. Andrew C. Barnard, Sr. and to disrupt the operations of Barnard Law Offices, L.P.

> **Item 2.  As it relates to MAS Collections ("MAS"), any materials, documents or items which evidence monies paid to, or received by you, from, MAS; financial and ownership interest of any person or entity of any person or entity who owns or operates MAS; MAS corporate records; and any and all monies that you, or some other person with whom you have a familial and/or business relationship with in connection with the services that they provide, paid and/or received from MAS.**

**RESPONSE and objection and motion for protection as to Item 2:**     Objection and motion for protection and to quash as to other claims but this claim for documents specifically related to this claim and to quash and for protection as documents for this claim have already been produced: overbroad, attorney client privileged, work product privileged, irrelevant and outside the scope of permissible discovery as not reasonably calculated to lead to relevant or admissible evidence, violates the financial privacy interests of everyone. As a predicate, all information for this claim has been submitted.

First, there is no MAS Collections anywhere in Sunbiz. Regardless, Mas Collections was not involved in any aspect of this claim. Next, the financial information of MAS Collections and the items requested in this category are objected to based upon:(1) vagueness, overbreath, invasive of the attorney client privilege, invasive of the work product privilege, violation of confidentiality agreements in settlements, violation of confidential nature of settlement negotiations, violation of Florida's constitutional right to privacy in its financial matters under Art. 1, Sec. 23, Fla. Const. as interpreted by *Spry v. Professional Employer Plans, Inc.*, 985 So. 2d 1187 (Fla. 1ˢᵗ DCA 2008), and its progeny as to the financial and business records of Mas Collections, LLC; the marital privilege of Andrew C. Barnard. Additionally, Andrew Barnard has no right to access to such information, nor any right to seek such information from Mas Collections, LLC or  any experts utilized by Mas Collections, LLC, none of which has anything to do with this case anyway. Defendant has failed to establish any relevance of the requested information to any issue in this case, and thus the fishing information sought is harassment, and is outside the scope of permissible discovery as it is not relevant nor calculated to lead to admissible evidence. Additionally, the information sought is barred under the collateral matter impeachment rule. Additionally, the requested information is over burdensome to assimilate and

A4761

overbroad, intentionally structured to harass Barnard Law Offices, L.P. in blatant violation of a restraining order entered on July 31, 2017, and extended by request of Mr. Font on August 16, 2017. Mr. Font has violated this order by issuing the subpoenae against Max Barnard, Andrew Barnard, Sr. And Barnard Law Offices, LP, who are all co-workers of Ms. Raulerson. However, Mr. Font cannot avoid his contempt of the court order by claiming litigation privilege as the essence of a stalking injunction is harassment. Mr. Font knows darn well that Max Barnard and Brandy Raulerson did not become an attorneys until 2015 and also knows from past production that they do not have any personal files on any client of Barnard Law Offices, L.P. or Max Collections nor are they privy to any financial information from Barnard Law Offices, L.P. (Other than their respective paychecks which are clearly irrelevant) or Max Collections. The subpoena were issued with the sole objective of causing anxiety in Max Barnard, Ms. Raulerson, and to disrupt the business operations of Barnard Law Offices, L.P.

> **Item 3. As it relates to any person and/or entity that provides any type of service for an insured in relation to the submission of homeowner's insurance claims that you stand to derive any direct and/or indirect financial benefit, any materials, documents or items which evidence: monies paid to, or received from, said person or entity, including any monies paid to, or received from, any entity that you have ownership or financial interest in; and monies paid to, or received from, any other person with whom you have a familial and/or business relationship with in connection with the services said person or entity provided.**

RESPONSE and objection and motion for protection as to Item 3:        Objection and motion for protection and to quash as to other claims but this claim for documents specifically related to this claim and to quash and for protection as documents for this claim have already been produced: overbroad, attorney client privileged, work product privileged, irrelevant and outside the scope of permissible discovery as not reasonably calculated to lead to relevant or admissible evidence, violates the financial privacy interests of everyone.

As a predicate, all information for this claim has been submitted. Objection and motion for protection and to quash as to other claims but this claim for documents specifically related to this claim and to quash and for protection as documents for this claim have already been produced: objection; the *duces tecum* is an overbroad and prohibited fishing expedition prohibited under *Palmer v. Servis*, 393 So.2d 653 (Fla. 5th DCA 1981) and *Gen. Elec. Capital Corp. v. Nunziata*, 124 So. 3d 940, 943 (Fla. 2d DCA 2013), as well as violating the attorney client privilege, the work product privilege, as well as being irrelevant and outside the scope of permissible discovery as not reasonably calculated to lead to relevant or admissible evidence under Fla. R. Civ. P. 1.280(b), and further violates the financial privacy interests of everyone under Florida's constitutional Right to privacy.

**As a predicate, all information for this claim has been submitted and was submitted on July 7, 2017, as shown by the notice of compliance with prior subpoenae.** Thus the *duces tecum* portion of the subpoenae must be quashed and protection granted as the request for the information is duplicative and abusive and harassing as it seeks records already produced.

As to this claim, Omni Expert Consulting had nothing to do with it. Thus there is no estimate on this claim which assesses the scope or value. Moreover, there was no distribution of any insurance proceeds in this claim to anyone by Barnard Law Offices, L.P. The only insurance

proceeds involved in this claim were received by the insured and third parties two years before Barnard Law Offices, L.P. became aware of the claim.

Moreover the request doesn't make any sense besides being privileged under multiple laws, burdensome on its face, vague, overbroad and irrelevant and outside the scope of permissible discovery as it is not calculated to lead to relevant evidence or admissible evidence. Ms. Raulerson is an employee of Barnard Law Offices, L.P. Her salary and bonuses and benefits are completely irrelevant to the issues in this case and violate Ms. Raulerson's right of privacy as to her financial matters under Art. 1, Sec. 23, Fla. Const. as interpreted by *Spry v. Professional Employer Plans, Inc.*, 985 So. 2d 1187 (Fla. 1ˢᵗ DCA 2008), and its progeny. Moreover, Ms. Raulerson does not have any personal records covering any of the items requested by Mr. Fischer, who is the associate of Mr. Font, who is acting as the authorized agent for Southern Fidelity Insurance Company, within the scope of his agency. Moreover the items requested in this category are objected to based upon:(1) vagueness, overbreath, invasive of the attorney client privilege, invasive of the work product privilege, violation of confidentiality agreements in settlements for past cases, as well as work product on pending cases, violation of confidential nature of settlement negotiations; and the marital privilege of Andrew C. Barnard. Additionally, Ms. Raulerson has no access to such information, nor any right to seek such information from service providers and experts utilized by Barnard Law Offices, L.P., none of which has anything to do with this case anyway. Defendant has failed to establish any relevance of the requested information to any issue in this case, and thus the fishing information sought is outside the scope of permissible discovery as it is not relevant nor calculated to lead to admissible evidence. Additionally, the information sought is barred under the collateral matter impeachment rule. Additionally, the requested information is over burdensome to assimilate and overbroad, intentionally structured to harass Ms. Raulerson in blatant violation of a restraining order entered on July 31, 2017, and extended by request of Mr. Font on August 16, 2017. Mr. Font has violated this order by having his employee Bryan Fischer sign the subpoena. However, Mr. Font cannot avoid his contempt of the court order by use of a nominee to harass Ms. Raulerson. Mr. Font knows darn well that Ms. Raulerson did not become an attorney until 2015 and also knows from past production that she does not have any personal files on any client of Barnard Law Offices, L.P. nor is she privy to any financial information. The subpoena was issued with the sole objective of causing anxiety in Ms. Raulerson.

> **4. As it relates to any business or entity that you have an ownership, management and/or financial interest in, and to the extent that they are directly and/or indirectly providing any type of service or product in relation to the submission of homeowner's insurance claims, or deriving some direct and/or indirect benefit therefrom, provide the following for the last three calendar years: tax returns; bank records; accounting statements, credit card statements; any leases associated with the operations; any documents evidencing the assets of the business; accounting statements; expense forms; drafts issued; closing statements; corporate records; bylaws; tax forms issued and/or received; billing ledgers; invoices; estimates; proposals; records of any transactions; contracts that were in force; and any other document which evidences your interest, profits gained, losses incurred, expenses**

A4763

occurred and the persons and entities who profited or incurred a loss in relation thereto.

**RESPONSE and objection and motion for protection as to Item 4:**     Objection and motion for protection and to quash as to other claims but this claim for documents specifically related to this claim and to quash and for protection as documents for this claim have already been produced: objection; the *duces tecum* is an overbroad and prohibited fishing expedition prohibited under *Palmer v. Servis*, 393 So.2d 653 (Fla. 5th DCA 1981) and *Gen. Elec. Capital Corp. v. Nunziata*, 124 So. 3d 940, 943 (Fla. 2d DCA 2013), as well as violating the attorney client privilege, the work product privilege, as well as being irrelevant and outside the scope of permissible discovery as not reasonably calculated to lead to relevant or admissible evidence under Fla. R. Civ. P. 1.280(b), and further violates the financial privacy interests of everyone under Florida's constitutional Right to privacy.

**As a predicate, all information for this claim has been submitted and was submitted on July 7, 2017, as shown by the notice of compliance with prior subpoenae.** Thus the *duces tecum* portion of the subpoenae must be quashed and protection granted as the request for the information is duplicative and abusive and harassing as it seeks records already produced.

As to this claim, Omni Expert Consulting had nothing to do with it. Thus there is no estimate on this claim which assesses the scope or value. Moreover, there was no distribution of any insurance proceeds in this claim to anyone by Barnard Law Offices, L.P. The only insurance proceeds involved in this claim were received by the insured and third parties two years before Barnard Law Offices, L.P. became aware of the claim.

As a predicate, Max Barnard nor Ms. Raulerson have any business entity or business interest in any other entity involved in Homeowner claims other than their licenses to practice law in The State of Florida. They - as well as Andrew C. Barnard Sr., - are employees of the Barnard Law Offices, L.P. and (other than Andrew C. Barnard Sr.) have no ownership, management and or financial interest therein. Thus, the request doesn't apply to anything that Max Barnard or Ms. Raulerson does, and is merely harassment. It is invasive and burdensome on its face, vague, overbroad and irrelevant and outside the scope of permissible discovery as it is not calculated to lead to relevant evidence or admissible evidence related to this case. Their remunerations and benefits are completely irrelevant to the issues in this case and violate their rights of privacy as to her financial matters under Art. 1, Sec. 23, Fla. Const. as interpreted by *Spry v. Professional Employer Plans, Inc.*, 985 So. 2d 1187 (Fla. 1st DCA 2008), and its progeny. Similarly, the information clearly violates this same right to privacy and privilege held by Barnard Law Offices, L.P. and Andrew C. Barnard, Sr.

Moreover, none of the individuals have any personal records covering any of the items requested by Southern Fidelity Insurance Company. These are records which do not exist for this claim at all. All other records on other claims belong to Barnard Law Offices, L.P. production of which are objected to based upon:(1) vagueness, overbreath, invasive of the attorney client privilege, invasive of the work product privilege, violation of confidentiality agreements in settlements for past cases, as well as work product on pending cases, violation of confidential nature of settlement negotiations; and the marital privilege of Andrew C. Barnard.

Additionally, Max Barnard nor Ms. Raulerson have access to such information, nor any right to seek such information from service providers and experts utilized by Barnard Law

Offices, L.P., none of which has anything to do with this case anyway. Defendant has failed to establish any relevance of the requested information to any issue in this case, and thus the fishing information sought is outside the scope of permissible discovery as it is not relevant nor calculated to lead to admissible evidence. Additionally, the information sought is barred under the collateral matter impeachment rule. Additionally, the requested information is over burdensome to assimilate and overbroad, intentionally structured to harass Ms. Raulerson and her co-workers in blatant violation of a restraining order entered on July 31, 2017, and extended by request of Mr. Font on August 16, 2017. Mr. Font has violated this order by having his employee Bryan Fischer sign the subpoena for Ms. Raulerson, and by issuing the subpoenae against Barnard. However, Mr. Font cannot avoid his contempt of the court order by use of a nominee to harass Ms. Raulerson. Mr. Font knows darn well that Ms. Raulerson did not become an attorney until 2015 and also knows from past production that she does not have any personal files on any client of Barnard Law Offices, L.P, nor is she privy to any financial information. The subpoena was issued with the sole objective of causing anxiety in Ms. Raulerson.

**5. All estimates which convey that OCE assessed the scope and/or value of an insurance claim, and included therewith any all letters or drafts which reflect the amounts paid by the insurer in which the estimate was utilized, the net amount received by the insured, and the distributions received by any other person or entity that had any direct and/or indirect involvement in the claim that was presented to the insurer for payment.**

**RESPONSE and objection and motion for protection as to Item 5:** Objection and motion for protection and to quash as to other claims but this claim for documents specifically related to this claim and to quash and for protection as documents for this claim have already been produced; objection; the *duces tecum* is an overbroad and prohibited fishing expedition prohibited under *Palmer v. Servis*, 393 So.2d 653 (Fla. 5th DCA 1981) and *Gen. Elec. Capital Corp. v. Nunziata*, 124 So. 3d 940, 943 (Fla. 2d DCA 2013), as well as violating the attorney client privilege, the work product privilege, as well as being irrelevant and outside the scope of permissible discovery as not reasonably calculated to lead to relevant or admissible evidence under Fla. R. Civ. P. 1.280(b), and further violates the financial privacy interests of everyone under Florida's constitutional Right to privacy.

**As a predicate, all information for this claim has been submitted and was submitted on July 7, 2017, as shown by the notice of compliance with prior subpoenae.** Thus the *duces tecum* portion of the subpoenae must be quashed and protection granted as the request for the information is duplicative and abusive and harassing as it seeks records already produced.

As to this claim, Omni Expert Consulting had nothing to do with it. Thus there is no estimate on this claim which assesses the scope or value. Moreover, there was no distribution of any insurance proceeds in this claim to anyone by Barnard Law Offices, L.P. The only insurance proceeds involved in this claim were received by the insured and third parties two years before Barnard Law Offices, L.P. became aware of the claim.

As to other claims, the duces tecum is objectionable. As a predicate, the request invades multiple privileges under multiple laws, is burdensome on its face, is vague, is overbroad and is irrelevant and outside the scope of permissible discovery as it is not calculated to lead to relevant evidence or admissible evidence in this case. The requested information violates the attorney-

No. 15-22872 CA (01), Barnard's Urgent Motion for Protection on Subpoenae, Page 24

client privilege, the confidentiality of the clients' financial and litigation files, the work product privilege for each file and matter, as well as the client's right of privacy as to their respective financial matters under Art. 1, Sec. 23, Fla. Const. as interpreted by *Spry v. Professional Employer Plans, Inc.*, 985 So. 2d 1187 (Fla. 1st DCA 2008), and its progeny. Moreover, Ms. Raulerson does not have any personal records covering any of the items requested by Mr. Fischer, who is the associate of Mr. Font, who is acting as the authorized agent for Southern Fidelity Insurance Company, within the scope of his agency. Moreover, the items requested in this category are objected to based upon:(1) vagueness, overbreach, invasive of the attorney client privilege, invasive of the work product privilege, violation of confidentiality agreements in settlements for past cases, as well as work product on pending cases, violation of confidential nature of settlement negotiations; and the marital privilege of Andrew C. Barnard. Additionally, Ms. Raulerson has no access to such information, nor any right to seek such information from service providers and experts utilized by Barnard Law Offices, L.P., none of which has anything to do with this case anyway. Defendant has failed to establish any relevance of the requested information to any issue in this case, and thus the fishing information sought is outside the scope of permissible discovery as it is not relevant nor calculated to lead to admissible evidence. Additionally, the information sought is barred under the collateral matter impeachment rule. Additionally, the requested information is over burdensome to assimilate and overbroad, intentionally structured to harass Ms. Raulerson in blatant violation of a restraining order entered on July 31, 2017, and extended by request of Mr. Font on August 16, 2017. Mr. Font has violated this order by having his employee Bryan Fischer sign the subpoena. However, Mr. Font cannot avoid his contempt of the court order by use of a nominee to harass Ms. Raulerson. Mr. Font knows darn well that Ms. Raulerson did not become an attorney until 2015 and also knows from past production that she does not have any personal files on any client of Barnard Law Offices, L.P. nor is she privy to any financial information. The subpoena was issued with the sole objective of causing anxiety in Ms. Raulerson.

8/18/17  5:30 p

TR #1588

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2015-022872 CA 01

BARBARA & HECTOR SANTOS,

     Plaintiff,

vs..

SOUTHERN FIDELITY PROPERTY
& CASUALTY, INC.,

     Defendant.

_____/

## SUBPOENA DUCES TECUM FOR EVIDENTIARY HEARING ON AUGUST 24, 2017 AT 10:15 AM

To:   Brandy Raulerson, Esq.
     Barnard Law Offices, L.P.
     9655 South Dixie Highway, Suite 200
     Miami, FL 33156

**YOU ARE HEREBY COMMANDED** to appear before the Honorable Pedro P. Echarte at the Miami-Dade County Courthouse, 73 West Flagler Street, Miami, FL 33130, Room DCC 511, on August 24, 2017 at 10:15 A.M. to testify in the above-styled cause and to have with you at that time the following:

**Definitions and Instructions:** Unless specifically indicated otherwise, the scope is limited to a period of 3 years from the date of the subpoena, and "you" or "your," includes any person or entity that you have joint, shared or aligned financial and/or business interests with in the submission of homeowner's insurance claims, or any person or entity that you utilize in the operations associated with the submission of an insurance claim.

    1.  Any and all invoices and estimates from Omni Expert Consulting ("OCE"), as well as any other materials, documents or items which evidence: monies paid to you, or received from, OCE; financial and ownership interests of any person or entity affiliated with OCE; all direct and/or indirect benefactors of OCE; any direct and/or indirect financial benefit received by any person that you have a familial and/or business affiliation with, including, payments paid to the business/entity associated with said person; the managers and operators of OCE; any retainer agreements or contracts

┌─────────────────────┐
│ EXHIBIT B           │
│                     │
└─────────────────────┘

A4767

between OCE and an insured who is pursuing a homeowner's insurance claim on your behalf; any closing statements issued to an insured who utilized OCE in the submission of an insurance, or any other document or item which evidences the amount paid directly, and/or indirectly by the insured, insurer or some other person for the utilization of OCE or any third-party directly and/or indirectly affiliated with the submission of the homeowner's insurance claim.

2.  As it relates to MAS Collections ("MAS"), any materials, documents or items which evidence: monies paid to, or received by you, from, MAS; financial and ownership interest of any person or entity of any person or entity who owns or operates MAS; MAS' corporate records; and any and all monies that you, or some other person with whom you have a familial and/or business relationship with in connection with the services that they provide, paid and/or received from MAS.

3.  As it relates to any person and/or entity that provides any type of service for an insured in relation to the submission of homeowner's insurance claims that you stand to derive any direct and/or indirect financial benefit, any materials, documents or items which evidence: monies paid to, or received from, said person or entity, including any monies paid to, or receive from, any entity that you have ownership or financial interest in; and monies paid to, or received from, any other person with whom you have a familial and/or business relationship with in connection with the services said person or entity provided.

4.  As it relates to any business or entity that you have an ownership, management and/or financial interest in, and to the extent that they are directly and/or indirectly providing any type of service or product in relation to the submission of homeowner's insurance claims, or deriving some direct and/or indirect benefit therefrom, provide the following for the last three calendar years: tax returns; bank records; accounting statements; credit card statements; any leases associated with the operations; any documents evidencing the assets of the business; accounting statements; expense forms; drafts issued; closing statements; corporate records; bylaws; tax forms issued and/or received; billing ledgers; invoices; estimates; proposals; records of any transactions; contracts that were in force; and any other document which evidences your interests, profits gained, losses

incurred, expenses occurred and the persons and entities who profited or incurred a loss in relation thereto.

5. All estimates which convey that OCE assessed the scope and/or value of an insurance claim, and included therewith, any all letters or drafts which reflect the amounts paid by the insurer in which the OCE estimate was utilized, the net amount received by the insured, and the distributions received by any other person or entity that had any direct and/or indirect involvement in the claim that was presented to the insurer for payment.

## PLEASE CONTACT MY OFFICE AT (954) 248-2920 UPON RECEIPT OF THIS SUBPOENA.

## PLEASE ADVISE MY OFFICE SHOULD AN INTERPRETER BE REQUIRED AT THE HEARING

You are Subpoenaed to appear by the following attorneys and unless excused from this Subpoena by these attorneys or the Court, you shall respond to this Subpoena as directed.

DATED this August 18, 2017

BRYAN FISCHER, ESQ.
Florida Bar # 117711